**Billy Ray NITSCH, Plaintiff,**

v.

**The CITY OF EL PASO, et al., Defendants.**

**No. EP–06–CA–0042 KC.**

United States District Court, W.D. Texas, El Paso Division.

Feb. 26, 2007.

Sam Snoddy, Law Office, El Paso, TX, for Plaintiff.

Jennifer F. Callan, El Paso City Attorney's Office, Duane A. Baker, Attorney At Law, John Lomax Anderson, Paso City Attorney's Office, El Paso, TX, for Defendants.

## ORDER

CARDONE, District Judge.

On this day, the Court considered Defendant police officers William Hooks', Eric. Watts', Roberto Concha's, Saul Villalobos', Eloy Serna's, John Wasmuth's, Clinton Nelms', and Raul Perez' Motion for Summary Judgment as well as the City of El Paso's Motion for Summary Judgment. For the reasons set forth herein, the police officers' Motion is **GRANTED** in part and denied in part and the City's Motion is **GRANTED**.

## I. BACKGROUND

On January 30, 2004, Plaintiff Billy Ray Nitsch ("Nitsch"), a member of the Marine Corps, and his friend Brendon Campbell ("Campbell") were arrested for public intoxication outside of Capone's Bar in El Paso, Texas. Pl.'s Resp. to Officers' Mot. for Summ. J. 1–2 ("Response to Officers' Motion"). Prior to the arrest, Officers Clinton Nelms ("Nelms") and Eric Watts ("Watts"), members of the El Paso Police Department Vice Unit conducting an undercover operation at Capone's, observed Nitsch and Campbell ordering drinks inside the bar and exhibiting signs of intoxication.[1] Def. Officers' Proposed Undisputed Facts ¶¶ 2–4 ("Officers' Facts"). Officer William Hooks and another officer asked Nitsch and Campbell to step outside the bar where other officers, led by Sergeant Raul Perez, had converged to conduct an enforcement action in conjunction with the Texas Alcohol Beverage Commission ("TABC"). Id. ¶¶ 4–5. Once

outside, one of the TABC agents administered a field sobriety test on the two men. Id. ¶¶ 5–6. Based upon the outcome of the field sobriety test, the odor of Nitsch's breath, his bloodshot eyes, and his unsteady balance the Officers determined that Nitsch was intoxicated. Id. ¶ 6. Nitsch denies having bloodshot eyes and an unsteady balance, though he fails to cite to any evidence in support of his claim. Nitsch's Resp. to Def. Officers' Proposed Undisputed Facts ("Response to Officers' Facts") ¶ 6. According to the officers, Nitsch became belligerent and uncooperative. Officers' Facts ¶ 7. Nitsch denies being in such a state though again he fails to cite to any evidence in support of his denial. Resp. to Officers' Facts ¶ 7. The officers state that they asked Nitsch for the name of a responsible third party to whom he could be turned over and if he wanted to be taken to the Provost Marshall's Office at Fort Bliss. Officers' Facts ¶ 7. According to the officers, Nitsch responded by stating that he wanted to go back into the bar to get the other marines and "kick the officers [sic] asses." Id. Nitsch denies that he was asked for the name of a responsible third party and that he was given the option of being taken to the Provost Marshall's house. Resp. to Officers' Facts ¶ 7.

Nitsch was then placed under arrest for public intoxication and an El Paso Police patrol car transported him to the Central Regional Command Center. Officers' Facts ¶ 8. Prior to being booked into the detention center, a jail nurse examined Nitsch and found that he had no injuries. Id. ¶ 10. Thereafter, Nitsch claims that an officer struck him on the back of his head while he was handcuffed and facing the wall in the jail holding cell. Nitsch's App.

---

1. Nitsch objects to the use of this term because he states that it is undefined. Pl.'s Resp. to Defs.' Prop'd Undisputed Facts 2.

of Material Opposing Defs.' Mot. for Summ. J. Ex. 2, at 4. Nitsch asked the officers around him for the name of the person who struck him. *Id.* Nitsch says that the officers denied seeing anything. *Id.* According to each of the officers, they never hit Nitsch nor did they see a fellow officer hit Nitsch either. Defs.' Ex. K.2, Witness Statements of Officer Saul Villalobos ¶ 33, Officer Robert Concha ¶ 32, Officer Paul Armendariz ¶ 33, Officer William Hooks ¶ 33, Officer Clinton Nelms ¶ 32, Officer Eric Watts ¶ 32, Officer Eloy Serna ¶ 33, Officer John Wasmuth ¶ 11. On three separate occasions, Nitsch reviewed photo arrays in an attempt to identify the officer who hit him. Officers' Mot. for Summ. J. 5. He has not been able to do so. However, Nitsch has identified an individual who witnessed the event. Pl.'s App. of Material Opposing City's Mot. for Summ. J. Ex. 1, at 86. After being released, Nitsch was diagnosed as suffering from concussion syndrome. Nitsch's App. of Material Opposing Defs.' Mot. for Summ. J. Ex. 1, at 6.

Nitsch and Campbell were taken into custody and booked into jail without appearing before a magistrate. Resp. to Officers' Mot. 2. Nitsch has never appeared before a magistrate regarding this matter. *Id.* Pursuant to the District Attorney's Information Management System ("DIMS"), Officer Villalobos reviewed a "bond schedule" to determine the amount of bond to be set for public intoxication, the offense with which Nitsch was charged. *Id.* The Field Officer taught Villalobos and the other police officers to use the bond schedule to set bond. *Id.* at 3. Nitsch was in custody for five hours before being released on bail of $93.00, which was later refunded after the charges were dropped. Pl.'s App. of Material Opposing Officers' Mot. for Summ. J. Ex. 2, at 5.

Nitsch sued Officers William Hooks, Eric Watts, Roberto Concha, Saul Villalobos, Eloy Serna, John Wasmuth, Clinton Nelms, and Raul Perez ("Officers") as well as the City of El Paso alleging violations of his constitutional rights under 42 U.S.C. § 1983 and as well as violations of state law.

## II. DISCUSSION

In this Order, the Court addresses seriatim the Officers' and the City's Motions for Summary Judgment.

### A. Standard

A summary judgment movant must show by affidavit or other evidence that there is no genuine issue regarding any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the nonmoving party's claim or defense, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense. *Lavespere v. Niagara Machine & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir.1990). Once the movant carries the initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of S. Houston,* 922 F.2d 1183, 1187 (5th Cir.1991).

Summary judgment is required if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED.R.CIV.P. 56(c); *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548. In order for a court to conclude that there are no genuine issues of

material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n. 4, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## B. The Officers' Motion for Summary Judgment

The Officers move for summary judgment arguing that they are shielded from qualified immunity on Nitsch's constitutional claims, his claims under 42 U.S.C. § 1983, as well as his claims under state law.

### 1. Preliminary matters

The Officers have included a defense to a First Amendment claim in their Motion for Summary Judgment and Nitsch's counsel has responded to that defense. The Court has gone to great lengths to decipher Nitsch's Amended Complaint as well as his Summary Judgment pleadings. Even with the liberal construction that the Court has given to the Amended Complaint, the Court can find absolutely no reference to a First Amendment claim. The Court assumes that the Officers have included the arguments against a First Amendment claim in their Motions out of an abundance of precaution. Nevertheless, as Nitsch has failed to include a First Amendment claim in his complaint, and, as

the time for amending the pleadings has long passed, the Court will not consider this issue.[2]

Nitsch also asserts a claim of cruel and unusual punishment under the Eighth Amendment. The cruel and unusual punishment clause of the Eighth Amendment is implicated only after a formal adjudication of guilt. *Bell v. Wolfish*, 441 U.S. 520, 523, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *see Nerren v. Livingston Police Dep't*, 86 F.3d 469, 474 (5th Cir.1996). There has never been a formal adjudication of guilt in this case. Nitsch admits as much. Therefore, Nitsch's Eighth Amendment cruel and unusual punishment claim must fail.

Nitsch raises a claim of excessive bail under the Eighth Amendment in his Response to the City's Motion for Summary Judgment. However, as this issue was not mentioned in his Amended Complaint and since the time for amending the pleading has long passed, the Court will not consider this claim.

### 2. Qualified immunity

■ The Officers argue that they are shielded by qualified immunity from Nitsch's § 1983 claims. The doctrine of qualified immunity serves to shield government officials from liability based on the performance of discretionary functions. *Beltran v. City of El Paso*, 367 F.3d 299, 302–03 (5th Cir.2004); *Thompson v. Upshur County*, 245 F.3d 447, 456 (5th Cir.

---

**2.** Even had Nitsch properly pleaded a First Amendment claim in his Amended Complaint, his claim would fail. In claims such as this, the First Amendment is violated "if the individual engaged in conduct protected by the First Amendment and the government took action against the person because of that protected conduct." *Kinney v. Weaver*, 367 F.3d 337, 358 (5th Cir.2004). Nitsch argues that he had the right to question the police without being treated in the way that he was. He also argues that the police created exigent

circumstances, falsified records, and failed to take him before a neutral magistrate in violation of his First Amendment rights. He also argues that he did not strike an officer nor resist arrest, and that "one way to shut down a bar is to arrest patrons." Nitsch has failed to show the existence of any facts to demonstrate that he engaged in protected expression or that the Officers' took retaliatory action. In addition, the Court does not understand how Nitsch's arguments pertain to a First Amendment claim.

2001). To establish an entitlement to qualified immunity, a government official must first show that the conduct occurred while he was acting in his official capacity and within the scope of his discretionary authority. *Cronen v. Tex. Dep't of Human Servs.*, 977 F.2d 934, 939 (5th Cir.1992). Once a defendant has properly invoked qualified immunity, the burden rests on the plaintiff to show that the defense does not apply. *Beltran*, 367 F.3d at 303; *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir.2002) (en banc).

■ In order to show that the defense does not apply, the plaintiff must meet a two-pronged test. First, the plaintiff must show that the allegations, if true, establish a constitutional violation. *Hope v. Pelzer*, 536 U.S. 730, 736, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002); *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *McClendon*, 305 F.3d at 322–23. If plaintiff succeeds, he must then show that the official's conduct was objectively unreasonable in light of the clearly established legal rules at the time of the alleged violation. *McClendon*, 305 F.3d at 322–23.

There appears to be no dispute as to whether the police officers were acting in their official capacity at the time of the arrest, whether their actions were within the scope of their discretionary authority, or whether the police officers have properly invoked the defense. As such, Nitsch must come forward with evidence that the defense does not apply. Nitsch's arguments regarding the two-prong test will be discussed in conjunction with each of his claims below.

### 3. Federal law claims under 42 U.S.C. § 1983

Nitsch alleges that the Officers violated his constitutional rights by arresting him without probable cause and by using unreasonable and excessive force in taking him into custody in violation of the Fourth and Fourteenth Amendments of the United States Constitution. The Fourth Amendment ensures "the right of the people to be secure ... against unreasonable searches and seizures." U.S. CONST. amend. IV. The Fourteenth Amendment prohibits a state from "depriving any person of life, liberty, or property, without due process of law...." U.S. CONST. amend. XIV.

### a. Unlawful arrest

■ Because he exhibited signs of public intoxication in their presence and because they believed that he presented a danger to himself and others, the police argue that probable cause existed to arrest him for public intoxication. Nitsch argues that he was not in fact legally intoxicated, that his arrest was illegal because he was never taken before a neutral magistrate, and that the officers fabricated evidence against him.

The Fourth Amendment requires that an arrest be supported by either a properly issued arrest warrant or probable cause. *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir.2001). An arrest not supported by a warrant or probable cause is a wrongful arrest and a constitutional violation. *Dennis v. Warren*, 779 F.2d 245, 247 (5th Cir.1985). In order to defeat the defense of qualified immunity on summary judgment, Nitsch must produce evidence identifying conduct by the police officers which amounts to wrongful arrest in violation of the Fourth Amendment. *Castillo v. City of Weslaco*, 369 F.3d 504, 504 (5th Cir. 2004).

Under Texas law, a person commits the offense of public intoxication if he "appears in a public place while intoxicated to the degree that [he] may endanger [himself] or another." TEX. PENAL CODE ANN. § 49.02 (Vernon 2003). The danger need not be

immediate; potential danger to oneself or others suffices to show endangerment. *See Loera v. State,* 14 S.W.3d 464, 470 (Tex.App.2000); *see also Dickey v. State,* 552 S.W.2d 467, 468 (Tex.Crim.App.1977). Texas law expressly authorizes peace officers to "arrest an offender without a warrant for any offense committed in his presence or within his view." TEX.CODE OF CRIM. P. art. 14.01(b). A plaintiff's general denial of intoxication does not put the question into dispute because the true issue is whether the officers had probable cause to believe that the plaintiff committed the offense of public intoxication, not whether the plaintiff was actually intoxicated. *See Gibson v. Rich,* 44 F.3d 274, 277, 277 n. 7 (5th Cir.1995).

■ The Officers state that they arrested Nitsch because they saw him consuming alcohol at the bar and exhibiting signs of intoxication, because he failed a field sobriety test which they administered to him outside the bar, because he made specific threats, and because he was reluctant to provide information to them regarding a responsible third party. Def. Officers' Mot. 9. Thus, they argue they had probable cause to believe that Nitsch had committed the crime of public intoxication in their presence. Nitsch's only challenge to this statement is that he was not in fact intoxicated and that the Officers fabricated the claims.

Nitsch's repeated general denial of intoxication is of no avail because the crux of the constitutional issue is whether the officers had probable cause to arrest Nitsch for public intoxication, not whether Nitsch was in fact publicly intoxicated. Thus, Nitsch has provided no factual support to rebut the officers' claims of probable cause. Based upon the facts provided by the Officers, the Court finds that they had probable cause to arrest Nitsch for public intoxication outside of Capone's Bar.

Even if the Officers were mistaken in their probable cause determination, they would still be entitled to qualified immunity. So long as an officer's mistaken conclusion is reasonable, the officer is shielded by qualified immunity. *Gibson,* 44 F.3d at 277. The immunity defense protects "all but the plainly incompetent or those who knowingly violate the law." *Id.* (quoting *Hunter v. Bryant,* 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)). Therefore, if officers of reasonable competence could disagree on the existence of probable cause to arrest, immunity should apply. *Id.* (citing *Babb v. Dorman,* 33 F.3d 472, 477 (5th Cir.1994)). The touchstone of this inquiry is whether a reasonable person would have believed that the Officers' conduct conformed with the constitutional standard in light of information available to them and the clearly established law. *Goodson v. City of Corpus Christi,* 202 F.3d 730, 736 (5th Cir.2000). Therefore, police officers who mistakenly commit a constitutional violation are nevertheless entitled to immunity if the mistake is a reasonable one. *Id.* The relevant question, then is whether reasonably competent police officers could disagree about the lawfulness of the police officers actions in the present case. *See Harper v. Harris County, Texas,* 21 F.3d 597, 600 (5th Cir.1994).

Nitsch altogether fails to address this issue and to present any facts to challenging the probable cause determination, let alone facts challenging the reasonableness of the officers' mistake in finding probable cause. In light of the aforementioned law, the evidence presented by the Officers regarding Nitsch's state of mind supports the existence of probable cause and shows that Nitsch's arrest satisfies constitutional requirements. Thus, Nitsch has not established a violation of his clearly established Fourth Amendment rights.

■ Finally, Nitsch's argument that the officers' failure to take him before a magistrate for a probable cause determination negates the existence of probable cause for his arrest fails because the argument is irrelevant. It is well-settled that police officers may make warrantless arrests upon probable cause. *U.S. v. Watson,* 423 U.S. 411, 418–22, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). Thus, the only issue is whether the officers were correct in their belief that they had probable cause to arrest Nitsch. As the Court has held that the Officers had probable cause to make the arrest for a crime committed in their presence, Nitsch's argument fails. Accordingly, the Officers' Motion is granted on this claim.

### b. Fabrication of evidence

Nitsch alleges fabrication of evidence. This argument too must fail because he does not mention, even in passing, what evidence was fabricated nor does he show the existence of any factual support to make such claims. In addition, he fails to make a legal argument as to how this fabrication was an abridgement of his constitutional rights. Moreover, it is the role of the Plaintiff, and not this Court, to present arguments as to the abridgement of his constitutional rights. Since Nitsch has failed to adduce any facts to support this claim and has failed to argue how the fabrication might violate his rights, his claims of fabrication of evidence fail. The Officers' Motion is granted on this claim.

### c. Excessive force

■ The Officers argue that Nitsch's claim of excessive force must fail because he cannot identify who struck him on the head even after viewing three photo lineups. They cite the case of *Thompson v. Steele* for the proposition that personal involvement is a requirement essential to a civil rights action. *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir.1983).[3] Nitsch does not respond to any of these arguments. The Officers argue that this silence is grounds itself for summary judgment as they have established an absence of a genuine issue of material fact.

A plaintiff has a Fourteenth Amendment right to be free from the use of excessive police force. *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) ("Claims that law enforcement officials have used excessive force in the course of arrest, investigatory stop, or other 'seizure' of a free citizen … must be judged by reference to the Fourth Amendment's 'reasonableness' standard."). The Court, however, must take care not to substitute its judgment for that of the reasonable officer on the scene. *See id.* at 396, 109 S.Ct. 1865. In considering "reasonableness," the court must make allowances for the fact that police officers are often forced to make split-second judgments, in circumstances that are tense, uncertain, and rapidly evolving, about the amount of force that is necessary in a particular situation. *Id.* at 396–97, 109 S.Ct. 1865.

To that end, the Fifth Circuit has adopted a three-prong test for excessive force cases. *Flores v. City of Palacios,* 381 F.3d 391, 396 (5th Cir.2004). To prevail on his excessive force claim, Nitsch must show: (1) an injury, (2) which resulted directly and only from the use of force that was clearly excessive to the need; and

---

**3.** They also argue that Nitsch's claim is based upon speculation, bare allegations, and conclusory statements. In addition, the Officers have pleaded a defense to a state law claim of assault and battery in their Motion. After combing the Amended Complaint, the Court can find no assertion of an assault and battery claim. Accordingly, the Court will consider the Officers' assault and battery defense as a defense to Nitsch's excessive force claim.

(3) excessiveness of which was objectively unreasonable. *Id.; Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir.1996). Even if the police officers were mistaken in their belief regarding the amount of force necessary to use against Nitsch, the police officers are still immune from suit if their beliefs were objectively reasonable. *McClendon*, 305 F.3d at 322–23; *see also Goodson*, 202 F.3d at 736. The touchstone of this inquiry is whether a reasonable person would have believed that his conduct conformed with the constitutional standard in light of information available to him and the clearly established law. *Id.* Therefore, police officers who mistakenly commit a constitutional violation are nevertheless entitled to immunity if the mistake is a reasonable one. *Id.* The relevant question then is whether reasonably competent police officers could disagree about the lawfulness of the police officers actions in the present case. *See Harper v. Harris County*, 21 F.3d 597, 600 (5th Cir.1994).

Despite the Officers argument to the contrary, *Thompson* does not control in this case. *Thompson* and related cases reiterate the well-settled notion that § 1983 claims cannot be based upon a theory of *respondeat superior*; that is, supervisory personnel cannot be held liable for the actions of their employees under § 1983. In *Thompson*, the defendants were all supervisory corrections officers who had no direct involvement in plaintiff's alleged constitutional violations. *Thompson*, 709 F.2d at 382. The Fifth Circuit, citing *Monell v. N.Y. Dep't of Soc. Servs.*, held that the supervisory officials could not be held liable for the violations as § 1983 does not provide a cause of action based upon vicarious liability. *Id.*

Instead, the facts in this case are similar to those of *Miller v. Smith*, 220 F.3d 491 (7th Cir.2000). In *Miller*, the plaintiff could not identify which of the officers involved in his arrest smacked him while he was lying face down on the ground. *Miller*, 220 F.3d 491 at 495. The district court relied on the case of *Rascon v. Hardiman*, a case similar to *Thompson*, in holding for the defendants because it believed the plaintiff had to prove "the personal unlawful actions of a particular defendant in order to recover from the defendant." *Id.* (citing *Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir.1986)). On appeal, the Seventh Circuit reversed the district court noting that "*Rascon* simply restates the familiar decree that § 1983 does not support *respondeat superior*." *Id.* The court noted that the officers involved who had an opportunity to step in and prevent their fellow officers from violating the plaintiff's rights and failed to do so could be held liable. *Id.* Thus, the court held that the plaintiff's claim should have survived summary judgment because he presented a question of fact regarding the officers involvement, either in striking him or failing to prevent the violation. *Id.*

Although not binding, the court's opinion in *Miller* is instructive in this case, as the facts are similar. Nitsch claims that after he arrived at the police station, officers handcuffed him, asked him to face the wall, and told him to remove his wedding ring. Pl.'s App. of Material Opposing Def. Officers' Mot. for Summ. J. Ex. 2, at 4. At this point, Nitsch claims that an officer came up behind him and struck him on the head. Nitsch states that he asked the other officers for the name of the officer who struck him and that the officers responded that they didn't see anything. He has not been able to identify the officer who struck him; however he has identified an officer who witnessed him being struck.

As with the plaintiff in *Miller*, it is undisputed that Nitsch was in police custody and surrounded by police officers at the time of the alleged assault. As with the

plaintiff in *Miller*, Nitsch was not in a position to see which of the officers committed the alleged assault. And as in *Miller*, at least some of the officers surrounding the plaintiff would have witnessed the alleged violation and could have intervened to prevent the alleged assault.[4] Thus, as in *Miller*, Nitsch has demonstrated the existence of a question of fact despite his inability to identify the individual officer who struck him.

With regard to the Officers argument that Nitsch's claim should be dismissed as it is based on speculation and conclusory statements, the Court finds otherwise. In his affidavit, Nitsch has alleged specific facts surrounding the incident. He asserts that he was in the custody of the police at the police station, facing the wall, and surrounded by police officers. He has provided medical records demonstrating that he was diagnosed and treated for concussion syndrome. The Court finds that Nitsch has stated facts sufficiently specific to show a question of fact as to the involvement of the officers and as to the alleged assault. Nitsch has shown questions regarding the source of his injury, the amount of force that was applied as well as the unreasonableness of that force. In addition, the Court finds that the Officers are not shielded by qualified immunity in this action as reasonably competent police officers could not disagree about the lawfulness of the alleged police officers actions under the facts alleged. The Court holds that Nitsch's excessive force claim survives the Motion for Summary Judgment as there are questions of fact regarding the presence of excessive force.

### d. Conspiracy claim

Nitsch also claims that the officers conspired "to violate the rights, privileges and immunities guaranteed to the Plaintiff by the Constitution and laws of the United States and the laws of the State of Texas" as part of his failure to train claim against the City. Though Nitsch couches this claim within his failure to train claim, the Court will again allow a liberal construction of the Amended Complaint and consider the claim against the police. Nitsch discussed conspiracy as a grounds for the Court's jurisdiction in his Amended Complaint and the Officers addressed the issue in their Motion. The Court notes that are a number of federal statutes that include claims of conspiracy and Nitsch has failed to allege in his Amended Complaint under which statute he is bringing such claims. However, in the jurisdiction section of the Amended Complaint, Nitsch asserts jurisdiction for this Court under 42 U.S.C. §§ 1985–86 and under the RICO statutes 18 U.S.C. §§ 1961–68, all of which involve claims of conspiracy. Therefore, the Court will construe Nitsch's claims for conspiracy as arising under these provisions.

In order to succeed on a claim of conspiracy under § 1985, the plaintiff must show that the defendants were motivated in whole or in part by racial or class based animus. 42 U.S.C. § 1985; *Griffin v. Breckenridge*, 403 U.S. 88, 101–02, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *Bradt v. Smith*, 634 F.2d 796, 798 (5th Cir.1981). Section 1986 creates a cause of action against those who know of, and have the power, to prevent conspiracies to commit the wrongs described in § 1985. 42 U.S.C. § 1986. In order to prevail on a claim

---

**4.** The Court notes that in this circuit, as in the Seventh Circuit, "an officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983." *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir.1995) (citing *Harris v. Chanclor*, 537 F.2d 203, 205–06 (5th Cir. 1976)).

under § 1986, a cause of action under § 1985 must exist. *See Santistevan v. Loveridge,* 732 F.2d 116, 118 (10th Cir. 1984). In order to succeed on a claim of conspiracy under the RICO statute, the plaintiff must show the existence of "a pattern of racketeering activity" or "conduct of an enterprise" among the other elements of an action under 18 U.S.C. § 1962. Conclusory allegations of conspiracy cannot support an action under § 1983. *See Wilson v. Budney,* 976 F.2d 957, 958 (5th Cir.1992) (citing *Hale v. Harney,* 786 F.2d 688, 690 (5th Cir.1986)).

Nitsch's Amended Complaint fails to state a factual basis to support any of the above conspiracy charges. With regard to the § 1985 claim, Nitsch has made no argument or factual showing that he is a member of a protected class. Thus, his § 1985 claim fails. As to his claim under § 1986, Nitsch has failed to assert a claim under § 1985. Therefore, this claim fails as well. With regard to the RICO claim, Nitsch does not allege facts showing the existence of the required elements of the claim. Nitsch's allegations of a conspiracy are conclusory and he fails to discuss any of the other requirements of the statute. Thus, his claims that the officers conspired to deprive him of his constitutional rights and his rights under federal law in violation of § 1983 fail.

### e. Malicious prosecution claim

■ Construing his Amended Complaint liberally, Nitsch also appears to allege "malicious prosecution" as part of his § 1983 claim. In this circuit, a free-standing claim of malicious prosecution is no violation of the Constitution and is therefore no grounds for a § 1983 claim. *Castellano v. Fragozo,* 352 F.3d 939, 942 (5th Cir.2003). Accordingly, the Court dismisses any § 1983 claim based upon the tort of "malicious prosecution."

### 4. State law claims

The Officers's Motion includes state law claims of false arrest and imprisonment. Nitsch included the claims of malicious arrest, imprisonment and prosecution in his Amended Complaint only as grounds for his § 1983 action. The Court has construed these claims as constitutional claims, not state law claims, because violations of state law are not a proper basis for a § 1983 claim. *Giovanni v. Lynn,* 48 F.3d 908, 912–13 (5th Cir.1995), *cert. denied,* 516 U.S. 860, 116 S.Ct. 167, 133 L.Ed.2d 109 (1995).

Nonetheless, construing Nitsch's Amended Complaint liberally, the Court now assumes that Nitsch intended to also assert separate state law claims, distinct from his § 1983 claims, for false arrest and imprisonment, conspiracy, and malicious prosecution. The elements of each of these are as follows:

### a. Conspiracy

■ In order to prevail on a claim of conspiracy, Nitsch must show "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful or overt acts; and (5) damages as the proximate result." *Fluorine On Call Ltd. v. Fluorogas Ltd.,* 380 F.3d 849, 866 (5th Cir.2004) (*quoting Massey v. Armco Steel Co.,* 652 S.W.2d 932, 934 (Tex.1983)).

### b. Malicious prosecution

■ In order to prevail on a claim for malicious prosecution, Nitsch must show that: (1) a criminal proceeding was commenced against him; (2) the prosecution was caused by the defendants; (3) the proceeding terminated in his favor; (4) he was innocent; (5) defendants acted without probable cause; (6) defendants acted with malice; and (7) the criminal

proceeding damaged plaintiff. *Kroger Texas Ltd. Partnership v. Suberu,* 113 S.W.3d 588, 597 (Tex.App.2003) (citing *Richey v. Brookshire Grocery,* 952 S.W.2d 515, 517 (Tex.1997)).

### c. False arrest and imprisonment

In order to prevail on a claim for false arrest or imprisonment Nitsch must show a(1) wilful detention; (2) without consent; and (3) without authority of law. *Sears Roebuck & Co. v. Castillo,* 693 S.W.2d 374, 375 (Tex.1985).

In response to each of Nitsch's aforementioned state tort claims, the police officers have raised the defense of official immunity under Texas state law. Texas law provides a government employee official immunity from suit arising from (1) the performance of their performance of discretionary duties in (2) good faith (3) while acting within the scope of authority. *City of Lancaster v. Chambers,* 883 S.W.2d 650, 653 (Tex.1994). As is evident from the aforementioned elements, the discretionary duty and scope of authority requirements of official immunity match the initial requirements for assertion of qualified immunity. *Hart v. O'Brien,* 127 F.3d 424, 450 (5th Cir.1997), *abrogated on other grounds by Kalina v. Fletcher,* 522 U.S. 118, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997); *see also Chambers,* 883 S.W.2d at 656 ("[t]his test is derived substantially from the test that has emerged under federal immunity law for claims of qualified immunity in § 1983 cases"). The only distinction between the two immunities is the good faith requirement on which this Court now focuses.

The good faith requirement is an objective standard. *Joe v. Two Thirty Nine Joint Venture,* 145 S.W.3d 150, 164 (Tex.2004). Under the standard, a court is required to assess "whether a reasonably prudent official, under the same or similar circumstances, could have believed that his conduct was justified based on the information he possessed when the conduct occurred." *Id.* In the specific context of injuries sustained during an arrest, the police officer must show that "a reasonably prudent officer, under the same or similar circumstances, could have believed that his conduct was justified based on the information he possessed when the conduct occurred." *Telthorster,* 92 S.W.3d at 465.

Good faith does not require the officer to prove that all would have acted as he or she did under the circumstances, but rather that a reasonably prudent officer might have reached the same decision under the circumstances. *Id.* The test does not focus on what a reasonable person would have done but rather "what a reasonable officer could have *believed.*" *Id.* (internal quotation omitted) (emphasis in original). "When an officer exceeds the bounds of reasonableness, good faith cannot be shown, and the officer will not enjoy official immunity's protection." *Id.* If the official claiming immunity can make the aforementioned showing, the burden shifts to he plaintiff to "offer evidence that no reasonable officer in [the defendant's] position could have believed that the facts were such that they justified his conduct." *Id.*

As the Court has held that the officers had probable cause to arrest Nitsch, they acted with the requisite good faith and are therefore entitled to immunity. In addition, Nitsch offers no rebuttal to the police officers' evidence that they had probable cause to arrest him for public intoxication. As all of Nitsch's state law claims are derived from and reliant upon his claim that his arrest for public intoxication was improper, that is without probable cause, and Nitsch presents no support for the proposition that the arrest itself was unauthorized, summary judgment is granted as to all asserted state law claims.

## C. The City's Motion for Summary Judgment

Nitsch argues for municipal liability based on two theories: (1) a *Monell* claim of an improper custom or policy, and (2) a claim of failure to train. With regard to the City's liability based upon an improper custom or policy, Nitsch states that the City had a policy to bypass a magistrate, depriving Nitsch of his right to a magistrate's determination of probable cause in violation of Texas law. The Court assumes, because Nitsch failed to explicitly allege it, that Nitsch intended to claim that such custom or policy violated the Fourth Amendment of the Constitution. Am. Compl. ¶¶ 59–62. In addition, in his Amended Complaint, Nitsch alleges the due to the City's policy "[b]ail was not set by a magistrate as required under Texas law." *Id.* ¶ 63. He claims that the City showed "wanton and deliberate indifference" to improper police conduct including abuse of authority, excessive force, and falsification of records. *Id.* ¶ 72. He also claims that the City violated his rights under the Fifth and Fourteenth Amendments through the Officers' "unlawful and malicious detention and confinement" of him. *Id.* ¶ 77.

With regard to the failure to train claim, Nitsch states in his Complaint that the errant policy is the City's failure to instruct their police officers to refrain from "(a) unlawfully and maliciously harassing a citizen who was acting in accordance with his constitutional and statutory rights, privileges and immunities, (b) unlawfully and maliciously arresting without a warrant, imprisoning and prosecuting a citizen who was acting in accordance with his constitutional and statutory rights, privileges, and immunities, (c) conspiring to violate the rights privileges, and immunities guaranteed to [him] by the Constitution and the laws of the United States and the laws of the State of Texas; and (d) otherwise depriving [him] of his constitutional and statutory rights, privileges, and immunities, (e) failing to take [him] before a neutral and detached magistrate to determine whether there was probable cause, and (f) if the magistrate found probable cause, to have the court determine the amount of bond, if any." Am. Compl. ¶ 78.

### 1. Initial matters

In the jurisdiction section of his Amended Complaint, Nitsch argues that the City deprived him of his "Eighth Amendment right to be free from cruel and unusual punishment." Am. Compl. ¶ 7. In its Motion, the City argues that Nitsch's claims of violations of the Eighth Amendment's cruel and unusual punishment clause must fail because those rights only attach post-conviction and Nitsch was never convicted. Nitsch appears argue in response that Eighth Amendment is applicable because the excessive bail clause is relevant to the facts of his situation.

The Cruel and Unusual Punishment clause of the Eighth Amendment is not implicated until after a formal adjudication of guilt. *Bell v. Wolfish.* 441 U.S. 520, 523, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *see Nerren v. Livingston Police Dep't,* 86 F.3d 469, 474 (5th Cir.1996). Nitsch has never been convicted in this case nor has he pleaded guilty. Indeed Nitsch admits in his Amended Complaint that all charges against him have been dismissed. Therefore, Nitsch's Eighth Amendment cruel and unusual claim must fail.

As Nitsch has failed to raise a claim of a violation of the excessive bail clause of the Eighth Amendment in his Amended Complaint and as the time to amend the pleadings has long passed, the Court will not consider this claim. The only remaining references that Nitsch made to bail or bond in his Amended Complaint were with regard to the setting of bail under Texas

law. The Court addresses that issue below.

## 2. Custom or policy claim

The City argues that the Officers had probable cause to arrest Nitsch, and thus any attempt by Nitsch to claim a Fourth Amendment false arrest and to impute liability to the City must fail. With regard to Nitsch's Due Process excessive force claim, the City argues that Nitsch fails to allege any facts tending to show the existence of a municipal policy or custom authorizing his alleged mistreatment by the Officers. With regard to the magistrate claim, the City argues that § 1983 claims based upon violation of Texas law must fail because violations of state law cannot form the basis for a claim under § 1983. Additionally, the City argues that under the Fourth Amendment, Nitsch has no right to a probable cause determination prior to booking and thus there is no basis for his § 1983 claim.

Nitsch appears to respond that the City is liable because the Officers falsified documents and fabricated evidence regarding his arrest in violation of his right to due process under the Fourteenth Amendment. He also argues that the City had a policy, which prevented him from receiving a determination of probable cause by a neutral magistrate as required by the United States Constitution and Texas law.

A city can be sued and subjected to monetary damages and injunctive relief under § 1983 only if its official policy or custom caused plaintiff to be deprived of a federally protected right. *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). A city cannot be held liable for civil rights violations under a theory of *respondeat superior* or vicarious liability. *Id.; Monell*, 436 U.S. at 694, 98 S.Ct. 2018. To support a claim based upon the existence of a custom or policy, Nitsch must plead facts that

show: (1) a policy or custom existed; (2) governmental policymakers actually or constructively knew of its existence; (3) a constitutional violation occurred; and (4) the custom or policy served as the moving force behind the violation. *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 532–33 (5th Cir.1996).

The Court addresses each of Nitsch's *Monell* claims in turn.

### a. False arrest

Nitsch fails to discuss the custom or policy that lead to his false arrest. In addition, the Court has already held that the Officers had probable cause to arrest Nitsch and therefore there was no underlying Fourth Amendment violation upon which to base a § 1983 claim. Accordingly, as there was no false arrest, Nitsch can have no *Monell* claim against the City.

### b. Falsification and fabrication of evidence

Nitsch's claims of falsification and fabrication of evidence also fail. In § 1983 claims against a municipality, the claimant must plead specific facts and not merely conclusory allegations. *Rodriguez v. Avita*, 871 F.2d 552, 554 (5th Cir.1989), *cert. denied*, 493 U.S. 854, 110 S.Ct. 156, 107 L.Ed.2d 114 (1989). A claimant must show that the municipality's governing body or official delegated with policy making authority had actual or constructive knowledge of the policy which caused the violation. *Id.*

Nitsch does not provide any facts to show the existence of a custom or policy of the City which resulted in his being deprived of his rights under the Constitution. He does not provide any facts to show that policymakers knew of the custom or policy nor does he address how the custom or policy was the moving force behind the violation. Rather, Nitsch simply skips

over three of the four elements on this basis for his § 1983 claim against the City and premises liability upon conclusory allegations of a cover-up. As Nitsch has failed to adduce facts to support his claim of falsification of evidence or to show that the City had a custom or policy allowing this, Nitsch's claims fail.

#### c. Excessive force

As with the falsification of evidence claim, Nitsch's excessive force claim must fail. He fails to address the existence of a City custom or policy, that policymakers knew of the custom or policy, and that such custom or policy was the moving force behind the violation.

#### d. State law as basis for *Monell* claim

■ Nitsch's claims of a violation of Articles 14.06 and 15.74 of the Texas Code of Criminal Procedure requiring an arrestee to be presented to a magistrate for a probable cause determination and for bail setting also fail. It is well-settled that violations of state law provide no basis for a § 1983 claim. *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir.2002) (citing *Wong v. Stripling*, 881 F.2d 200, 202 (5th Cir. 1989)). While a state may impose greater restrictions upon arrests, their citizens do not thereby obtain greater federal rights. *Fields v. City of S. Houston*, 922 F.2d 1183, 1189 (5th Cir.1991). Nitsch's claims of violation of Articles 14.06 and 15.74 of the Texas Code of Criminal Procedure obviously arise under state law. Thus, Nitsch cannot base a § 1983 claim on these grounds and such claims fail.

#### e. Fourth Amendment

■ Nitsch's next claims that the City violated his Fourth Amendment right to a probable cause determination conducted by a magistrate subsequent to his warrantless arrest. This claim too fails. First, as the City points out, Nitsch has no right to a probable cause determination prior to booking in jail. *County of Riverside v. McLaughlin*, 500 U.S. 44, 53–54, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991) ("[T]he Fourth Amendment does not compel an immediate determination of probable cause upon completing the administrative steps incident to arrest."). Nor is probable cause a determination a prerequisite to a charging decision. *Gerstein v. Pugh*, 420 U.S. 103, 125 n. 26, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). Thus, Nitsch's claim that had he appeared before a magistrate, "there is a reasonable probability that he would not have been [sic] a finding of probable cause by a magistrate and Plaintiff being booked into jail" does not state a constitutional violation Am. Compl. ¶ 62. Under the Fourth Amendment as explained in *County of Riverside* and *Gerstein*, Nitsch has no constitutional right to receive a probable cause determination prior to being booked into jail and thus no guarantee that he would have been exonerated prior to being booked.

Also, it is undisputed that had Nitsch not paid the $93 bond and been released, he would have been presented to a magistrate for a probable cause determination. He fails to explain how his decision to seek release prior to seeing a magistrate violates his constitutional rights. Still, Nitsch argues that his probable cause determination was delayed unreasonably as he actually never received a determination by a magistrate and that the City's DIMS policy was the cause of this deprivation.

In *Gerstein*, the Supreme Court held that "the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest." *Gerstein*, 420 U.S. at 114, 95 S.Ct. 854. The Court stated that a probable cause determination "is required only for suspects who suffer restraints on liberty other than the condition

that they appear for trial." *Id.* at 125 n. 26, 95 S.Ct. 854. The Court did not limit "significant restraint on liberty" to physical detention; instead, the Court noted that certain terms of pre-trial release could effect a "significant restraint on liberty." *Id.* at 114, 95 S.Ct. 854. The Court specifically cited 18 U.S.C. § 3146 as an example of such terms, though the Court provided no further elaboration. *Id.*

In *Evans v. Ball,* the Fifth Circuit reviewed the terms of 18 U.S.C. § 3146 and found that the restraint on liberty implicating the Fourth Amendment includes not only physical detention but also the freedom to travel while on pre-trial release. *Evans v. Ball,* 168 F.3d 856, 861, 861 n. 5 (5th Cir.1999). Thus, the Fifth Circuit held that the plaintiff was seized under the Fourth Amendment based upon a summons coupled with liberty restrictions including requirements that the plaintiff seek permission before leaving the state, that he sign a personal recognizance bond, and that he report regularly to pretrial services. *Id.* at 861.

Accordingly, if Nitsch can demonstrate that he was subject to an unreasonable detention or to pre-trial release with terms amounting to a significant restraint on liberty then he would be entitled to a magistrate's probable cause determination. After Nitsch paid his bail, he was released from custody. Nitsch has failed to presented any facts or arguments to show that he was subject to any continuing liberty restraints under the terms of his pretrial release other than that he appear for trial. Thus, according to *Gerstein,* he was not seized under the Fourth Amendment and he was not entitled to a *Gerstein* probable cause determination. And, therefore, Nitsch was not subject to a violation of his rights under the Fourth Amendment and his § 1983 claim fails. The Court notes that if Nitsch had presented facts showing the presence of a

significant restraint on his liberty, including limitations on his ability to travel and other liberty restrictions, the outcome could well have been different.

The Court does not rule on the constitutionality of the DIMS program as a whole because the parties have not adequately briefed those issues, including the constitutionality of the program under the Due Process clause of the Fourteenth Amendment or the excessive bail clause of the Eighth Amendment.

### 3. Inadequate training claim

The City argues that Nitsch has presented no evidence to support his claim of inadequate training. Nitsch responds that the police were trained to bypass a magistrate. However, Nitsch does not pursue any arguments to support the claims in his Amended Complaint that inadequate training resulted in the police "unlawfully and maliciously harassing a citizen ..., unlawfully and maliciously arresting without a warrant, imprisoning and prosecuting a citizen ..., conspiring to violate the rights ... guaranteed to the Plaintiff ... [,][f]ailing to take Plaintiff before a neutral and detached magistrate ... [and] to have the court determine the amount of bond." Am. Compl. ¶ 78.

Though a municipality cannot be held vicariously liable for the acts of an employee, it can be held liable under § 1983 based upon on a claim of inadequate training or failure to train. *Conner v. Travis County,* 209 F.3d 794, 796 (5th Cir.2000). To succeed on such a claim, a plaintiff must show that "(1) the training or hiring procedures of the municipality's policy maker were inadequate, (2) the municipality's policymaker was deliberately indifferent in adopting the hiring or training policy, and (3) the inadequate hiring or training policy directly caused the plaintiff's injury." *Id.* (quoting *Baker v. Putnal,* 75 F.3d 190, 200 (5th Cir.1996)).

Further, "mere proof that the injury could have been prevented if the officer had received better or additional training cannot, without more, support liability." *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir.2005) (citing *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998)). In addition, "a plaintiff must allege with specificity how a particular training program is defective." *Id.*

Nitsch fails to make any showing of the existence of inadequate training or hiring procedures with regard to any of his claims nor has he alleged with any specificity how the training was defective. Nitsch has failed to make a showing that the policymaker involved in setting the training policy was deliberately indifferent nor has he even discussed in any way that the inadequate hiring or training policy directly caused his injury. He has failed to do so not only with regard to his claim of the City's failure to take him before a magistrate but also with regard to all of the other claims that he raised with respect to the police officers. Accordingly, all of Nitsch's failure to train claims fail.

#### 4. Vicarious Liability

As the City correctly notes, it cannot be held vicariously liable for the acts of its employees; rather, the City itself must act wrongly itself to be subject to liability. *Rodriguez*, 871 F.2d at 554. Therefore, any claims that Nitsch might have asserted regarding the City's liability for the actions of the Officers in their individual or official capacity's must fail.

#### 5. State Law Claims

The City argues that it cannot be held liable for Nitsch's state law claims as they are all intentional torts and the state has not waived sovereign immunity for inten-

tional torts. Nitsch argues that, in fact, "the City is not entitled to state law sovereign immunity and state law limitations on damages because local governments like the City are not protected from liability under 42 U.S.C. § 1983." Resp. to City's Mot. ¶ 12. He cites the case of *Howlett v. Rose*, 496 U.S. 356, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990) to support this contention.

Nitsch is correct that local governments are subject to liability under § 1983. The Court has addressed such liability on the preceding pages of this Order. However, Nitsch's reliance on *Howlett v. Rose* to support his argument that his separate state law claims are not subject to state sovereign immunity is misplaced. *Howlett* stands for the proposition that a state sovereign immunity defense is not available in a § 1983 action brought in state court. That case is inapposite to this situation because the claims at issue here are not § 1983 claims, rather they are state law claims, separate and distinct from Nitsch's § 1983 claims, and, of course, this is federal court not state court. The City and this Court have assumed to Nitsch's benefit that Nitsch has asserted claims of tortious conduct by the City under state law in addition to his § 1983 claims. Nevertheless, his state law claims fail because the City is entitled to sovereign immunity.

##### a. Sovereign immunity

 Under Texas law, two statutory provisions are relevant to a determination of whether Texas has waived its sovereign immunity to suit in Texas courts. The first statute waives sovereign immunity, the second stands as an exception to that waiver. Section 101.021(2) of the Texas Civil Practice Management and Remedies Code provides that "a governmental unit [5]

---

**5.** A "governmental unit" is defined, *inter alia*, as "this state and all the several agencies of government that collectively constitute the

government of this state, including other agencies bearing different designations, and all departments, bureaus, boards, commis-

in the state is liable for ... (2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. MGMT. & REM.CODE ANN. § 101.021. Section 101.057 of the same Code, the exception to the waiver, provides that "[t]his chapter does not apply to a claim ... arising out of assault, battery, false imprisonment, or any other intentional tort." TEX. CIV. PRAC. MGMT. & REM.CODE ANN. § 101.057. Having introduced the relevant provisions, the analysis proceeds to whether the waiver would apply to the present claims.

*Tex. Dep't of Pub. Safety v. Petta,* 44 S.W.3d 575, 580 (Tex.2001) is instructive on the issue. *Petta* addressed an immunity claim arising from a traffic stop in which a police officer struck the plaintiff's closed automobile window with his nightstick, aimed his handgun at her and threatened to kill her, and ended in a high speed vehicle pursuit in which the officer shot at the plaintiff's tires with a shotgun and aimed the shotgun at the plaintiff. *Id.* at 577–78. Petta sued the police officer individually alleging assault, aggravated assault, battery, reckless conduct and terroristic threat. *Id.* at 577. Petta also sued the police officer in his official capacity and the Department of Public Safety ("DPS") under the Texas Tort Claims Act ("TTCA"), alleging that DPS is liable for injuries proximately caused by the officers wrongful acts and negligence during the traffic stop and subsequent chase on the grounds that DPS negligently trained and supervised the police officer. *Id.*

The trial court granted sovereign immunity for DPS but the Appellate Court reversed. *Id.* It reasoned that under the

facts "[n]o liability can attach to the state for the intentional tort of its employee. But we must consider separately the allegations of negligence against the DPS." *Petta v. Rivera,* 985 S.W.2d 199, 206 (Tex. App.1998). The Court relied on *Delaney v. Univ. of Houston,* 835 S.W.2d 56 (Tex. 1992), which involved a denial of sovereign immunity in a case involving the rape of a student in her dormitory in a state university as a consequence of a failure to repair the lock on her door after notice of the defect. In reviewing the determination that sovereign immunity would not preclude the negligence claims, the Court focused on the language of the section 101.057 exception and concluded that " 'arising out of' in [section 101.057] ... requires a certain nexus for the provision to apply. In section 101.057(2), that nexus is between the claim and an intentional tort." *Petta,* 985 S.W.2d at 205. The Court concluded that "[b]ased on ... allegations [of negligent implementation or in the alternative failure to implement DPS policy relevant to the police officer's improper conduct] the pendent claims of negligence do not relate to Rivera's intentional acts; they relate to the alleged negligent acts or omission which occurred prior to this incident." *Id.* at 206.

On appeal, the Supreme Court reversed the decision of the appellate court finding the claims against DPS within the waiver of sovereign immunity. Under the aforementioned facts, the Supreme Court addressed whether the plaintiff's negligent training and supervision claims against the Department were barred by sovereign immunity. *Id.* at 580. In determining whether section 101.057 would place the claims within the exception to the waiver

sions, offices, agencies, councils, and courts," "an emergency service organization," or " 'any other institution, agency, or organ of government the status and authority of which

are derived from the Constitution of Texas or from laws passed by the legislature under the constitution.' " TEX. CIV. PRAC. & REM.CODE ANN. § 101.001(3).

of sovereign immunity, the Court reviewed the conduct from which the claims arose and concluded that

> the conduct [the plaintiff] complains of is the same conduct that forms the basis of her assault and battery claim against [the police officer]. The specific conduct-hitting the window, calling a tow truck, aiming the gun, blocking [the plaintiff] in with the cruiser, and firing at [the plaintiff's] tires—is clearly intentional. The allegations fit squarely within section 101.057's exclusion of claims arising out of assault, battery, and false imprisonment.

*Id.* The Court, addressing the claims against DPS alleging negligence in failure to furnish the defendant officer proper training materials and instruction, noted

> [t]o state a claim under the Tort Claims Act, a plaintiff must allege an injury resulting from the 'condition or use of tangible personal or real property.' We have long held that information is not tangible personal property, since it is an abstract concept that lacks corporeal, physical, or palpable qualities.

*Id.* at 580. Moreover, "fail[ure] to devise adequate tests to assess [the police officer's] emotional competence ... and ... fail[ure] to discipline [the officer] after the incident ... also involve the misuse or non-use of information and are thus barred by sovereign immunity." *Id.*

The Supreme Court finally commented on its earlier decision in *Young v. City of Dimmitt*, 787 S.W.2d 50 (Tex.1990) (per curiam), which discusses a claim of negligent supervision against a governmental unit which also involves an intentional tort against an individual officer. In its terse decision in *Young*, the Court stated as follows:

> The court of appeals concluded "that notwithstanding appellants' allegations of negligent hiring, retention, and entrustment, [the officer's] intentional tor-

tious action on the occurrence in question precludes an application of the Tort Claims Act." [*Young v. City of Dimmitt*, 776 S.W.2d 671 (Tex.App.1989).] We disapprove this statement. Although a governmental unit is immune from claims arising out of intentional torts, TEX. CIV. PRAC. & REM.CODE ANN. § 101.057 (Vernon 1986), petitioners' negligent employment and entrustment claims arise out of the alleged negligence of the city employees supervising the officer, not out of the officer's intentional tort.

*Young*, 787 S.W.2d at 51. The *Petta* court noted that any reliance on *Young* was misplaced, remarking that

> In *Young*, we disapproved of a court of appeals' statement that an officer's intentional act necessarily precluded a suit for negligence under the Tort Claims Act. In doing so, we simply pointed out that a claim for negligent supervision or training was a distinct cause of action. Nothing in what we said implied that this distinct cause of action was otherwise excepted from satisfying the Tort Claims Act's tangible personal property requirement. As we stated above, Petta's negligent training claim does not involve tangible personal property. Accordingly, it is not cognizable under the Tort Claims Act.

*Id.* at 581.

The interpretation of sections 101.021(2) and 101.057 involve questions of state law. As such, this Court is bound by decisions of the highest court of the state. *Hortonville Joint School Dist. No. 1 v. Hortonville Ed. Assn.*, 426 U.S. 482, 488, 96 S.Ct. 2308, 49 L.Ed.2d 1 (1976). The exact bounds of the TTCA, and 101.021(2) in particular, have been a continuing source of difficulty for the Texas Supreme Court, on at least one occasion causing one of the Justices to call for legislative definition of

the very provision before this Court today. *Lowe v. Texas Tech Univ.*, 540 S.W.2d 297, 301–303 (Tex.1976) (Greenhill, C.J., concurring) ("In any event, the Legislature will be in session in the near future; and it would be very helpful if it would give litigants and the courts guidelines which are easier to follow."); *see also Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 586 (Tex.1996) ("It is difficult to imagine a tort case which does not involve the use, or nonuse, of some item of real or personal property; and to me, if there is a waiver in all cases where some item of personal property is either used or not used, there is virtually an unrestricted waiver of immunity." (internal quotation marks omitted)). Notwithstanding any confusion arising from vagueries associated with the express language of section 101.021(2), certain guiding principles have been established. First, "a governmental unit, is immune from liability for ... injury unless that immunity has been waived by the Texas Tort Claims Act." *LeLeaux v. Hamshire–Fannett Indep. Sch. Dist.*, 835 S.W.2d 49, 51 (Tex.1992). Next, "the clear intent of the Act [is] that the waiver of sovereign immunity be limited." *Id.*

The remarks in *Young* "disapproving" of the lower courts' merging of the treatment of intentional tort claims by an officer and negligent supervision claims against a supervisor may, at first blush, suggest the viability of a negligent supervision claim. Such is not the case. The Court in *Young* disapproved of the lower court's characterization of the plaintiff's claims as "arising out of intentional torts," *Young*, 787 S.W.2d at 51, rather than characterizing the plaintiff's claims as arising out of the acts and omissions of the supervisors in overlooking several warning signals and placing the officer in a situation where he could drive an automobile into the plaintiffs' vehicle. *Id.* It is noteworthy that, notwithstanding this decision, the lower court's conclusion that sovereign immunity

precluded the claims against the supervisors was affirmed. *Id.*

The reason for this affirmance was, as the Court points out in *Petta*, the intentional tort and negligent training represent "distinct cause[s] of action." *Petta*, 44 S.W.3d at 581. If the use of the vehicle is the source of the claim, the claim is barred under the intentional tort exception although satisfying the waiver's requirement that the claim involve the use of government property. If the claims arise out the conduct prior to the officer's conduct with the vehicle, the claims avoid the intentional tort exception but no longer satisfy the waiver's requirement that the claim involve the use of government property. With either characterization, the claim is barred by sovereign immunity.

The present claims against the City are similarly barred by sovereign immunity. As a matter of pleading, the allegations substantiating the claims against the Officers are the same incorporated into the claims against the City. It matters little as to whether the actual claims against the City sound in negligence or gross negligence. As *Petta* and the express language of section 101.057 make clear, the proper focus is the conduct giving rise to the harm, specifically the conduct of the officers whose conduct caused the alleged harm, not the specific cause of action or causes of action alleged. *See Delaney v. Univ. of Houston*, 835 S.W.2d 56, 59 (1992). In the present case, plaintiff's specific allegations against the actors, the Officers, expressly involve intentional torts, not negligence claims. As was the case in *Young*, if plaintiffs attempt to parse the intentional tort claims against the Officers and negligence claims against the City, the complaint fails on the same grounds, landing outside the waiver for use of government property or inside the exception to the waiver for intentional torts. *Johnson*

*v. Waters,* 317 F.Supp.2d 726, 739–40 (E.D.Tex.2004) (finding claim precluded as arising from intentional tort). In either event, the claims are barred.

As the claims against the City do not fall within a waiver of sovereign immunity, this Court must proceed to the second portion of the inquiry under *Lapides,* specifically whether *Erie* would otherwise preclude the claims. "Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state." *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Immunity applicable to state law claims is governed by state law rather than federal law. *Seminole Tribe of Fla. v. Fla.,* 517 U.S. 44, 90 n. 14, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (Stevens, J., dissenting) ("many of the cases decided after *Hans[ v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890) ] in which this Court has recognized state sovereign immunity involved claims premised on the breach of rights that were rooted in state law.... In such cases, the Court's application of the state-law immunity appears simply to foreshadow (or follow) the rule of *Erie* " (citations omitted)); *Norton v. McShane,* 332 F.2d 855, 860 n. 6 (5th Cir.1964); *Omosegbon,* 335 F.3d at 673 ("under *Erie* state rules of immunity are binding in federal court with respect to state causes of action" (internal quotation marks omitted)); *Gray–Hopkins v. Prince George's County,* 309 F.3d 224, 232 (4th Cir.2002) ("[w]e must look to substantive state law ... in determining the nature and scope of a claimed immunity"). Stated generally, "federal courts are to apply state substantive law and federal procedural law." *Hanna v. Plumer,* 380 U.S. 460, 465, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). "*Erie*-type problems [are] not to be solved by reference to any traditional or common-sense substance-procedure distinction.... [T]he question is not whether a statute of limitations is deemed a matter of 'procedure' in some sen[s]e. The question is ... does it significantly affect the result of a litigation for a federal court to disregard a law of a State that would be controlling in an action upon the same claim by the same parties in a State court?'" *Id.* at 465–66, 85 S.Ct. 1136.

There can be little doubt that the application or refusal to apply sovereign immunity in the present case would significantly affect the result. Were this Court to refuse the application of the state provisions governing sovereign immunity, the City of El Paso may be subject to liability to the extent claims against it can be substantiated. A state court may not hear a claim against the state when sovereign immunity is invoked. *Tex. Dep't of Transp. v. Jones,* 8 S.W.3d 636, 637 (Tex.1999). Sovereign immunity under state law involves immunity from suit, not immunity from liability. *Id.* at 638. As such, refusal to apply state law principles governing liability requires the State to remain a party to a suit whereas in state court it would not be required to do so for want of subject matter jurisdiction.

There may be concerns that state law applicable to its own jurisdiction may not bear on the jurisdiction of federal courts, and the foregoing determination on whether the law is outcome determinative does precisely that. "A state may not use state law to limit the jurisdiction of the federal courts." *Gary A. v. New Trier High Sch. Dist. No. 203,* 796 F.2d 940, 945 (7th Cir. 1986). While this proposition is undoubtedly true, the "basic philosophy [of the *Erie* analysis] is that a federal court exercising its diversity jurisdiction to adjudicate rights created by the state sits as another court of that state sits should reach the same result as the state courts would reach in deciding the identical issue." *Markham v. City of Newport News,* 292 F.2d 711, 718 (4th Cir.1961). As such,

the state statute addressing sovereign immunity does not constitute a restraint on federal jurisdiction but instead serves as a restraint on state court jurisdiction that is applied with like force to the claims in federal court. Such an outcome does not offend *Erie* or basic federal court jurisdictional principles.

All state claims against the City of El Paso are therefore dismissed by virtue of state sovereign immunity.

### III. CONCLUSION

Nitsch's Motion to Exceed Page Limitation (Doc. No. 65) and his Motion for Extension of Time to File a Response (Doc. No. 63) are **GRANTED.** The Officers' Motion for Summary Judgment (Doc. No. 46) is **GRANTED** in part and denied in part as to Nitsch's excessive force claim. The City's Motion for Summary Judgment (Doc. No. 60) is **GRANTED** with regard to all claims.

**SO ORDERED.**