In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2780

BOGI MILLER,

Plaintiff-Appellant,

v.

LIONEL A. SMITH,
and KEVIN BROWER,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Indiana, Fort Wayne Division.
No. 1:97CV0439--William C. Lee, Chief Judge.

Argued May 15, 2000--Decided July 10, 2000

Before CUDAHY, FLAUM, and EVANS, Circuit Judges.

EVANS, Circuit Judge.  At least one too many U-Haul trucks were motoring eastbound on the Indiana toll road around midnight on a winter night a few years ago. Because Bogi Miller was driving one of them, he had an encounter with Indiana law enforcement officers that led to this lawsuit which was dismissed on summary judgment by the district court. The encounter occurred when state troopers mistook Miller's U-Haul--filled with deli supplies--for that of a group of fleeing, armed felons. Miller's suit against the officers under 42 U.S.C. sec. 1983, as well as Indiana common and statutory law, alleged that he was kicked and punched by one of the officers while he lay handcuffed on the ground, and that when he and his companion were released, their wallets were considerably lighter. We review the grant of summary judgment de novo.

On the morning of December 12, 1995, Miller and his friend, Stanley Szeliga, drove a rented U-Haul to Chicago to retrieve goods for Szeliga's Cleveland-based delicatessen. The trip went smoothly, and after a successful afternoon's shopping the two piled back into the truck and began their long drive back to Cleveland. As the clock bore down on midnight, Miller, who was driving, stopped at a toll road service area near LaGrange, Indiana, to fill up the truck. Leaving

Szeliga asleep in the cab, Miller hopped out and began refueling the U-Haul.

Meanwhile, a few minutes earlier on a nearby stretch of the tollway, Indiana State Troopers Lionel Smith and Eric Dunn received word that three armed men had just robbed a company in Elkhart, Indiana, and that the robbers fled the scene in a U-Haul truck. According to their dispatcher--who was receiving reports from a civilian motorist claiming to be following the getaway truck--the suspects were heading east toward Smith and Dunn. The troopers sped west to head them off. Along the way they learned that the race of the robbers was unknown, but that all three had donned ski masks and that at least one was wearing a blue hooded jacket. They also learned that the men were packing pistols and a sawed-off shotgun.

By the time Smith and Dunn had nearly reached the suspects, the dispatcher informed them that the target U-Haul had pulled into a service area near LaGrange. The troopers immediately made their way there, cut off their lights, and stealthily parked their squad cars in back of the gas station so as not to be spotted from the gas pumps. On the way in, both officers noted that the man refueling a U-Haul was wearing a blue jacket and stocking cap. Thus, feeling reasonably sure that they had found the heavily armed suspects, the troopers drew their shotguns and moved in.

While Dunn focused his attention on anyone who might be in the truck's cab, Smith took care of the man at the pump, popping out from behind the gas station with his shotgun trained on the suspect, yelling "State Police! Let me see your hands! Get down on the ground!" Miller, whose tenuous command of English (he's Polish and, according to the district court, "understands very limited English") was likely not sharpened by facing the business end of Smith's shotgun during a groggy, midnight pit stop, did not immediately hit the deck. Instead he froze and, according to Smith, stared at the officer with "this 'What are you doing?' look on his face."
Everyone involved agrees that Miller soon found himself handcuffed, face-down on the concrete. But how he got there and what happened next is disputed. According to the defense, Miller eventually dropped to his knees, at which point Officer Kevin Brower of the LaGrange police department, who had answered a call for back-up help, cuffed Miller and laid him on the ground. In this version of the story, Miller remained harmlessly in custody for the 10 minutes it took the police to discover that instead of a third suspect, guns, and the money and equipment that

had been stolen from the factory, the U-Haul contained only a variety of dried goods, specialty foods (including some pickled eggs), and a toll ticket showing that Miller and Szeliga had been on the Interstate at the time of the robbery. According to the police, Miller and Szeliga were then released, unhurt, with their possessions intact.

Miller says that once he gathered his wits he followed Officer Smith's instructions to the letter, voluntarily lying face-down beside the pumps. While he lay prone, he states that one of the officers cuffed him and then proceeded to kick him twice in the back, punch him, step on his face, and yank him around by the hair. When he was finally released, Miller claims that $750 had been removed from his wallet and that Szeliga reported to him that cash was stolen from the truck.

As stated, Miller sued all six of the officers who eventually arrived on the scene that night./1 He claimed that the officers violated his rights under the 4th, 5th, and 14th Amendments by stopping and detaining him unlawfully, depriving him of his property without due process, and using excessive force. He also sought compensation for the alleged conversion (the alleged lifting of money from his wallet) under Indiana common law and a provision of the Indiana code permitting conversion victims to recover treble damages.

On the officers' motion for summary judgment, the district court made quick work of Miller's case. First, it dismissed the sec. 1983 claims for unlawful stop and detention after Miller conceded that the officers had reason to believe he was an armed robber. It then dismissed all claims relating to three officers (the ones we haven't named) who arrived on the scene too late to have been involved in either the alleged use of excessive force or the alleged conversion. Next, the court found that Miller's excessive force claims against Officers Dunn and Smith were barred by the 11th Amendment, and that even if they were not, the claims (and those against Brower) could not survive summary judgment because Miller could neither identify the officer who allegedly attacked him, or otherwise support his claim with sufficient facts. The court then determined that since Indiana provided Miller with an adequate postdeprivation remedy for conversion regarding the claimed loss of money, he could not pursue related federal claims. See Parratt v. Taylor, 451 U.S. 527, 543-44 (1981).

Miller's brief focuses on the district court's decision to dismiss his sec. 1983 excessive force

claims against Smith, Dunn, and Brower. We will focus on that claim as well but we note that Miller dismissed his case against Dunn after his brief was filed.

We begin by reviewing the determination that the 11th Amendment barred Miller's claims against the state troopers. The court found that since Miller failed to specify whether he was suing the officers in their official or individual capacities, under a line of our authority beginning with Kolar v. County of Sangamon, 756 F.2d 564 (7th Cir. 1985), it was obliged to presume that Miller sued the officers in their official capacities--an assumption that immediately ended the case. See, Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89 (1984) (the 11th Amendment bars sec. 1983 claims for damages against state officers in their official capacity because the State, in such a suit, is the real party in interest).

Miller agrees that Kolar and its progeny establish such a presumption, but he argues that he rebutted it. The state officers, in turn, assert that the court correctly applied the rule and thus correctly dismissed the claims.

Hill v. Shelander, 924 F.2d 1370 (7th Cir. 1991), a case neither party discusses, is instructive. In Hill, we said Kolar did not contain a rigid rule that a sec. 1983 plaintiff who fails to designate whether a defendant is being sued in her official or individual capacity shall be presumed to be bringing the action against the defendant in her official capacity. See 924 F.2d at 1373. Instead, we explained that in Kolar we opted to treat the suit as against the defendant in his official capacity partly because the complaint referred to him by his official title, but more importantly because the suit itself challenged an official policy or custom. Id. By contrast, in Hill we found that the suit was properly construed as against the defendant in his individual capacity because he sought punitive damages--a remedy only available in an individual capacity suit--and because "the unconstitutional conduct alleged involve[d] [the defendant's] individual actions and nowhere allude[d] to an official policy or custom." Id. at 1374. We then spelled out a new regime for sec. 1983 claims that do not specify the capacity in which the defendant has been sued: Where the plaintiff seeks injunctive relief from official policies or customs, the defendant has been sued in her official capacity; where the plaintiff alleges tortious conduct of an individual acting under color of state law, the defendant has been sued in her individual capacity. Id. at 1373-1374.

Because the state officers rely on a series of cases involving the presumption from Kolar, which we rejected in Hill,[2] their attempts to defend the summary judgment grant on that ground must fail. As in Hill, it is clear here that Miller filed suit against the officers for their alleged individual torts--at no time did he suggest that either Indiana or LaGrange espoused a custom or policy of robbing and beating innocent motorists. Thus, under Hill we can safely assume that he intended to file suit against the officers in their individual capacities. And this makes sense. Why in the world would Miller have bothered to sue the state troopers for damages in their official capacities when such a suit would run headlong into the 11th Amendment? Further, we note that even were we to evaluate the case under the pre-Hill regime where the manner in which parties treated the claim could overcome the governing presumption, see, e.g., Conner v. Reinhard, 847 F.2d 384, 394 n.8 (7th Cir. 1988), we would have reached the same result: The state defendants not only failed to raise their 11th Amendment arguments until nearly a year after they filed their answers, but they had previously raised the defense of qualified immunity--a defense available solely to officials facing sec. 1983 suits in their individual capacities. Thus, no matter how you slice it, it was error to conclude that Miller brought his claims against the state officers in their official capacities. The case should not have been dismissed on 11th Amendment grounds.

We now turn to the district court's finding that Miller could not bring excessive force claims against any of the officers because he could not specify which one of them attacked him. Citing Rascon v. Hardiman, 803 F.2d 269 (7th Cir. 1986), the district court stated that "[t]he law is clear that a plaintiff must prove the personal unlawful actions of a particular defendant in order to recover from the defendant." It then explained that since Miller cannot identify his assailant--he said he was lying face-down on the ground at the time of the attack--his claims against all the officers necessarily failed. We respectfully disagree.

Rascon merely restates the familiar decree that sec. 1983 does not support respondeat superior liability. 803 F.2d at 273 ("Without a showing of direct responsibility for the improper action, liability will not lie against a supervisory official."). And while it is true that a plaintiff must establish a defendant's personal responsibility for any claimed deprivation of a constitutional right, a defendant's direct participation in the deprivation is not required.

See, e.g., Smith v. Rowe, 761 F.2d 360, 369 (7th Cir. 1985). "An official satisfies the personal responsibility requirement of sec. 1983 if she acts or fails to act with a deliberate or reckless disregard of the plaintiff's constitutional rights." Crowder v. Lash, 687 F.2d 996, 1005 (7th Cir. 1982). Under this rule, police officers who have a realistic opportunity to step forward and prevent a fellow officer from violating a plaintiff's rights through the use of excessive force but fail to do so have been held liable. See, e.g., Yang v. Hardin, 37 F.3d 282, 285 (7th Cir. 1994).

Miller contends that either Smith or Brower (with Dunn nearby) smacked him around while he lay cuffed on the ground. If, as we are required to do at this point in the case, Miller's allegations are taken as true, whichever officer was not directly responsible for the beating was idly standing by. If Miller can show at trial that an officer attacked him while another officer ignored a realistic opportunity to intervene, he can recover. Since he alleges facts to support these claims, they should not have been dismissed.

And because Miller presents a viable claim on the facts alleged, the final reason for granting summary judgment--that Miller failed to introduce sufficient evidence to support his claim--must be rejected. In essence, what we have here is a credibility question. If the officers' version of the events is true, Miller was not mistreated. If the claims in Miller's lonely affidavit, however, are true, he has a case. To quote from the district court's opinion, "In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses." Following this rule leads to the conclusion that a trier of fact must sort out the truth of whether or not Miller was assaulted next to the U-Haul back in December of 1995.

The grant of summary judgment on the sec. 1983 excessive force claims against Officers Brower and Smith are REVERSED and the case is REMANDED for further proceedings. The district court's decision on the other claims remains undisturbed.


/1 Szeliga originally joined in the complaint, but he died 7 months later and was dropped from the suit.

/2 See Yeksigian, 900 F.2d 101 (7th Cir. 1990); Meadows v. State of Indiana, 854 F.2d 1068 (7th

Cir. 1988); Shockley v. Jones, 823 F.2d 1068 (7th
Cir. 1987).