Jacqueline A. JONES, Plaintiff,

v.

ADAMS COUNTY, WISCONSIN and Larry Warren, Adams County Sheriff, Defendants.

No. 02–C–469–C.

United States District Court, W.D. Wisconsin.

June 30, 2003.

Bruce M. Davey, Madison, WI, for Plaintiff.

Mark F. Yokom, Davis & Kuelthau, S.C., Oshkosh, WI, for Defendants.

## OPINION and ORDER

CRABB, District Judge.

This is a civil action for monetary relief brought pursuant to 42 U.S.C. §§ 1981 and 1983 and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e. Plaintiff Jacqueline A. Jones contends that defendants Adams County, Wisconsin and Larry Warren terminated her part-time position with the Adams County sheriff's department and refused to place her name on a female jail officer eligibility list because her husband is African–American. Plaintiff asserts claims under §§ 1981 and 1983 against both defendants. Her Title VII claim is lodged against defendant Adams County only. Jurisdiction is present. 28 U.S.C. § 1331. The case is before the court on defendants' motion for summary judgment on each of plaintiff's claims. Defendants' summary judgment motion will be granted in part and denied in part. Because a reasonable jury could conclude that defendant Warren and the members of the Adams County law enforcement committee knew that plaintiff was in an interracial marriage at the time they made the adverse employment decisions at issue in this case and based their decisions on that fact, I will deny defendants' summary judgment motion with respect to plaintiff's Title VII claim against defendant Adams County and her §§ 1981 and 1983 individual capacity claims against defendant Warren. In addition, I conclude that defendant Warren is not entitled to qualified immunity and plaintiff's at will employment status does not bar her claims under § 1981. However, because plaintiff has failed to produce any evidence that the employment decisions at issue resulted

from an official county policy or custom, I will grant summary judgment in defendant Adams County's favor on plaintiff's claims under §§ 1981 and 1983 and in defendant Warren's favor to the extent he is sued under those statutes in his official capacity.

From the parties' proposed findings of fact, I find that the following facts are material and undisputed.

## UNDISPUTED FACTS

Plaintiff Jacqueline A. Jones is a citizen of the state of Wisconsin. She is white and her husband is African–American. Defendant Adams County, Wisconsin is a political subdivision of the state of Wisconsin. Defendant Larry Warren was elected sheriff of defendant Adams County in November 2000 and was sworn into office on January 2, 2001. Defendant Warren is white.

In August 2000, plaintiff was hired to fill a part-time clerical position in the Adams County sheriff's department. At the time plaintiff was hired, Roberta Sindelar was the Adams County sheriff. Plaintiff's primary responsibility was typing reports. In September 2000, plaintiff was asked to assist with the department's payroll. In October 2000, plaintiff's duties were further expanded to include processing citations and accident forms and setting up citation hearings on the court calendar. In January 2001, after defendant Warren was sworn in as sheriff, plaintiff was deputized, along with other full and part-time department employees. Although plaintiff's name was not on a jail officer eligibility list, defendant Warren believed plaintiff had potential as a jail officer and asked the jail captain, Robert Cada, to create a part-time training schedule for her. On or about February 5, 2001, Cada met with plaintiff and created the training schedule. Plaintiff's part-time employment with defendant Adams County was at will. Her continued employment was not guaranteed by any written or oral contract or agreement.

In February 2001, the Adams County sheriff's department placed an advertisement in a local newspaper seeking applications for jail officer positions. Although there were no openings in February 2001, an eligibility list of qualified candidates was compiled and, as openings arose, they were filled by candidates from the eligibility list. Plaintiff and 39 other job seekers responded to the advertisement. In her application, plaintiff wrote that her "family is inter-racial and raising an inter-racial daughter has been the most rewarding experience of my life." On her application, plaintiff listed "Arthur Jones, Chief of Police, Milwaukee, WI" as a reference. The application indicates that plaintiff is married to Arthur Jones's brother. Arthur Jones is African–American.

Of the 40 people who responded to the advertisement, 28 applicants, including plaintiff, took a corrections officer exam. Defendant Warren and Cada reviewed the applications and test scores of all 28 applicants. No one scoring lower than an 80 on the test was selected for an interview. Plaintiff scored a 96. Of the 28 applicants who took the test, 26 were chosen for interviews, including plaintiff. The Adams County law enforcement committee interviewed the female officer eligibility list candidates on March 22, 2001. Defendant Warren and Cada were present during all of the interviews. The committee members asked each candidate identical questions that had been prepared in advance. The members of the law enforcement committee at the time were Fran Dehmlow, Jerry Jensen, Dave Repinski, George Kaldenberg and Dean Morgan. Before the March 22 interviews, each committee member received a packet including the candidates' written applications and infor-

mation from the their references. None of the committee members had ever met plaintiff's husband. After all of the interviews were completed, the committee discussed each candidate and decided which ones they would place on the final female jail officer eligibility list. On March 25, 2001, plaintiff received a letter informing her that she had not been chosen for placement on the list.

On March 27, 2001, after plaintiff met with defendant Warren and Cada, she was fired from her part-time employment with the Adams County sheriff's department. When making the decision to terminate plaintiff's part-time employment, defendant Warren was acting in his official capacity as Adams County sheriff.

At all times relevant to this action, defendant Adams County had in effect a non-discrimination policy and equal employment opportunity policy.

## OPINION

As defendants concede, their motion for summary judgment is premised largely on their factual assertion that defendant Warren and the Adams County law enforcement committee members did not know that plaintiff's husband was African–American at the time they decided not to place her name on the female officer eligibility list and terminated her part-time employment with the sheriff's department. *See* Dfts.' Reply Br., dkt. # 39, at 1–2 (noting that this is the "one factual issue from which everything else flows" for purposes of their motion). If the facts show clearly that no reasonable jury could conclude otherwise, then defendants are entitled to summary judgment because they could not have discriminated against plaintiff on the basis of her interracial marriage if they did not know her husband was African–American. I view the material facts and draw all inferences from those facts in the light

most favorable to plaintiff, the non-moving party. *See Schuster v. Lucent Technologies, Inc.,* 327 F.3d 569, 573 (7th Cir.2003).

I agree with defendants that some of plaintiff's evidence on this topic is less than compelling. For instance, plaintiff argues that she listed Arthur Jones, the Milwaukee chief of police, as a reference in her application and indicated that she is married to Jones's brother. Defendant Warren and all the law enforcement committee members aver that they did not know anything about Arthur Jones, including his race, at the time plaintiff was interviewed. Although plaintiff's application materials never identify Arthur Jones's race, plaintiff argues that Jones "is a pretty controversial figure about whom there have been stories in the newspaper" and that it "is pretty hard not to know who [Arthur Jones] is especially if you are in law enforcement." Plt.'s Br. in Opp'n to Dfts.' Mot. for Summ. J., dkt. # 25, at 8. Plaintiff cites only her own declaration and deposition in support of this proposition and does not explain why Jones is controversial or when or why he had been in the news. Plaintiff's conjecture about what, if anything, defendant Warren and the committee members knew about Arthur Jones would not be enough by itself to defeat defendants' motion for summary judgment.

■ However, it is undisputed that in plaintiff's application for placement on the female officer eligibility list, she stated that her "family is inter-racial and raising an inter-racial daughter has been the most rewarding experience of my life." It is also undisputed that all of the committee members received a packet including plaintiff's application. It would be reasonable for a jury to infer that the committee members charged with interviewing candidates actually read the applications before the interviews. Similarly, it is undisputed that defendant Warren reviewed plaintiff's

application. This evidence is sufficient to allow a reasonable jury to conclude that defendant Warren and the committee members were aware of plaintiff's interracial marriage. Defendants argue that plaintiff's statement that her "family is inter-racial" is "quite different from [plaintiff's] claim that she disclosed she had an inter-racial marriage. Representing that her family is interracial connotes a myriad of possibilities, only one of which might be that her spouse is of a different race." Dfts.' Reply Br., dkt. # 39, at 4. This effort to split hairs is unavailing, particularly in light of plaintiff's statement in her application that she is raising an interracial daughter. In short, it is disputed whether defendant Warren and the committee members knew that plaintiff was in an interracial marriage at the time the relevant employment decisions were made, a state of affairs that undermines defendants' assertion that they are entitled to summary judgment on all of plaintiff's claims. Of course, at trial, it will be plaintiff's burden to persuade the jury not only that defendant Warren knew she was married to an African–American but that he made or at least influenced the making of the decision not to place plaintiff's name on the female officer eligibility list and that he fired her from her part-time position and that he took these actions for racially discriminatory reasons.

■ A few more issues remain. Defendant Warren argues that the doctrine of qualified immunity shields him from plaintiff's 42 U.S.C. §§ 1981 and 1983 claims. However, defendant Warren's qualified immunity argument hinges on his factual assertion that he "did not know that [plaintiff] was married to an African–American when he terminate[d] her part-time at-will employment" and therefore plaintiff's interracial marriage could not have played a role in his decision. *Id.* at 12. Because I

have concluded that a reasonable jury could find that defendant Warren did know that plaintiff was in an interracial marriage, Warren's qualified immunity defense necessarily fails.

■ Defendants also argue that plaintiff's § 1981 claim relating to her termination from her part-time position with the Adams County sheriff's department must be rejected because she was an at will employee. Section 1981 prohibits racial discrimination in "the making, performance, modification, and termination of contracts" and in the "enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Defendants maintain that at will employees cannot bring § 1981 claims for wrongful termination because they do not work under employment contracts. Defendants cite *Gonzalez v. Ingersoll Milling Machine Co.*, 133 F.3d 1025 (7th Cir.1998), for this proposition. In that case, the Court of Appeals for the Seventh Circuit suggested in dicta that at will employees might not have the requisite contractual relationship with their employers necessary to support a § 1981 claim. *Id.* at 1034–35; *but see McKnight v. General Motors Corp.*, 908 F.2d 104, 109 (7th Cir. 1990) ("Employment at will is not a state of nature but a continuing contractual relation.") (abrogated on other grounds). Rejecting the dicta in *Ingersoll,* the Courts of Appeals for the Second, Fourth, Fifth, Eighth and Tenth Circuits have all concluded that "at-will employment relationships are sufficient to support § 1981 violations." *Staples v. Pepsi–Cola General Bottlers, Inc.*, 312 F.3d 294, 298 n. 3 (7th Cir.2002) (collecting cases). Although the question remains an open one in the Seventh Circuit, *see id.,* I am persuaded that an at will employee has a sufficient contractual relationship with her employer to bring her within the ambit of § 1981's

protections, even if the duration of the contract is not guaranteed. *See Spriggs v. Diamond Auto Glass,* 165 F.3d 1015, 1018 (4th Cir.1999) (citing *McKnight* and noting that "the lack of an agreed-upon duration does not invalidate the underlying contract itself"); *Riad v. 520 S. Michigan Ave. Associates. Ltd.,* 78 F.Supp.2d 748, 754–57 (N.D.Ill.1999) (concluding that § 1981's protections apply to at will employees). Accordingly, defendants are not entitled to summary judgment on plaintiff's § 1981 claims on the basis of her at will employment status.

■■■■ Next, defendant Adams County argues that plaintiff cannot show that the allegedly discriminatory employment decisions at issue in this case were made pursuant to an official county policy or custom, entitling the county to summary judgment on plaintiff's claims under §§ 1981 and 1983. In *Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." In other words, a municipality cannot be held liable simply because one of its employees violates an individual's constitutional or federal statutory rights. Rather, the conduct complained of must result from an official municipal policy or custom in order to render the municipality liable. *See id.* The same holds true for claims against municipal entities under § 1981. *See Jett v. Dallas Independent School Dist.,* 491 U.S. 701, 735, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989) ("We hold that the express 'action at law' provided by § 1983 ... provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor. Thus to prevail ... [a plaintiff] must show that the violation of his 'right to make contracts'

protected by § 1981 was caused by a custom or policy within the meaning of *Monell* and subsequent cases."). To avoid imposing vicarious liability on a municipality, a "court's task is to 'identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue.'" *McMillian v. Monroe County,* 520 U.S. 781, 784–85, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997) (quoting *Jett,* 491 U.S. at 737, 109 S.Ct. 2702). Not every municipal employee has the authority to speak definitively for the municipality and thereby expose it to liability. Only after "those officials who have the power to make official policy on a particular issue have been identified [may] the jury ... determine whether *their* decisions have caused the deprivation of rights at issue." *Jett,* 491 U.S. at 737, 109 S.Ct. 2702.

■■■■ Plaintiff alleges that defendant Warren and the members of the Adams County law enforcement committee decided not to place her name on the female officer eligibility list and that Warren fired her from her part-time position with the sheriff's department. To determine whether defendant Adams County is liable under §§ 1981 and 1983, I must determine whether defendant Warren or the law enforcement committee had final policymaking authority regarding the county's employment policies when plaintiff's name was not placed on the female officer eligibility list and she was fired. *See McMillian,* 520 U.S. at 785, 117 S.Ct. 1734 ("Our cases on the liability of local governments under § 1983 instruct us to ask whether governmental officials are final policymakers for the local government in a particular area, or on a particular issue," rather than in some generalized sense). "Deciding whether a specific official has final policy-

making authority is a question of state law." *Horwitz v. Board of Education*, 260 F.3d 602, 619 (7th Cir.2001). A police official's authority "to hire, fire, demote, and otherwise manage the people who work[ ] in his department ... is distinct from the authority to make policy for" a local government unit. *Venters v. City of Delphi*, 123 F.3d 956, 966 (7th Cir.1997); *see also Pembaur v. Cincinnati*, 475 U.S. 469, 483 n. 12, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (plurality opinion) ("Thus, for example, the County Sheriff may have discretion to hire and fire employees without also being the county official responsible for establishing county employment policy.").

■ It is undisputed that at all times relevant to this action, defendant Adams County had in effect a non-discrimination policy and an equal employment opportunity policy. Moreover, plaintiff has not proposed any facts or cited any provision of state law regarding defendant Warren's or the law enforcement committee's responsibilities, let alone facts suggesting the degree to which they are authorized to exercise final policymaking authority on behalf of defendant Adams County. Rather, in her brief, plaintiff states simply that "Warren and the law enforcement committee are the officials acting as the county's policy makers that caused the constitutional violation." Plt.'s Br. in Opp'n to Dfts.' Mot. for Summ. J., dkt. # 25, at 29. This unsupported statement is inadequate. As the Court of Appeals for the Seventh Circuit has noted repeatedly, summary judgment is the "put up or shut up" moment in a lawsuit. *See, e.g., Johnson v. Cambridge Industries, Inc.*, 325 F.3d 892, 901 (7th Cir.2003). In order to survive summary judgment on her §§ 1981 and 1983 claims against defendant Adams County, plaintiff was obliged to produce some evidence that the employment decisions at issue were the result of an official county policy or custom. She has failed to do that. Accordingly, I will grant summary judgment in favor of defendant Adams County on plaintiff's claims under §§ 1981 and 1983.

■ Finally, I note that it is not entirely clear whether plaintiff is suing defendant Warren in his official capacity only, or in his official and individual capacities. The parties agree that the decision to terminate plaintiff's part-time employment was made by defendant Warren in his official capacity as Adams County sheriff. Moreover, because defendant Warren has asserted a defense of qualified immunity and such a defense is available only in an individual capacity suit, *see Miller v. Smith*, 220 F.3d 491, 494 (7th Cir.2000), it appears the parties understand this to be an individual capacity suit as well. Only plaintiff's individual capacity claims under §§ 1981 and 1983 against defendant Warren can survive defendants' summary judgment motion because "official-capacity suits ... 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). In this case, that means that an official capacity suit against defendant Warren is in reality a suit against defendant Adams County. *See id.* at 166 ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). Therefore, to the extent plaintiff is suing defendant Warren in his official capacity, her failure to adduce evidence suggesting that he exercises final policymaking authority on behalf of the county dooms those claims. *See Horwitz*, 260 F.3d at 619.

## ORDER

IT IS ORDERED that

1. The motion for summary judgment of defendants Adams County, Wisconsin and Larry Warren is DENIED with respect to plaintiff Jacqueline A. Jones's Title VII claim against defendant Adams County and her claims under 42 U.S.C. §§ 1981 and 1983 against defendant Larry Warren in his individual capacity;

2. Defendants' motion for summary judgment is GRANTED with respect to plaintiff's §§ 1981 and 1983 claims against defendant Adams County and defendant Larry Warren in his official capacity.