In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-4286

VICTOR BROOKS,

*Plaintiff-Appellant,*

*v.*

MARK ROSS, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08 C 2417—**James B. Zagel**, *Judge.*

ARGUED JUNE 4, 2009—DECIDED AUGUST 20, 2009

Before FLAUM, WOOD, and TINDER, *Circuit Judges.*

WOOD, *Circuit Judge.* This is the second time this court has been asked to review the fall-out from Ronald Matrisciano's testimony before the Illinois Prison Review Board ("PRB") in support of inmate Harry Aleman's petition for parole. See *Matrisciano v. Randle,* 569 F.3d 723 (7th Cir. 2009). Normally, employees of the Illinois Department of Corrections ("IDOC") do not serve as advocates for inmates. But this is what happened in

December 2002 when Matrisciano, an IDOC employee, appeared before the PRB on behalf of Aleman. The PRB voted overwhelmingly against Aleman, with PRB member Victor Brooks providing the sole vote in his favor. Because of Aleman's notoriety, however, the media took an interest in the hearing and in Matrisciano's role in it. See *People v. Aleman,* 729 N.E.2d 20 (Ill. App. Ct. 2000). In the wake of that publicity, the director of the IDOC, Donald N. Snyder, demoted Matrisciano and initiated an investigation into the parole incident. About three years later, Matrisciano and Brooks were indicted for official misconduct and wire fraud in connection with the Aleman hearing. Both were acquitted.

Brooks became convinced that he was the victim of a conspiracy to prosecute him. He filed the present lawsuit in state court against Mark Ross, who had pre-pared a report for the Illinois State Police on the incident, and against Joseph Ponsetto, Edward Carter, Jorge L. Montes, Norman M. Sula, and Kenneth D. Tupy, all of whom played a role in the actions against Brooks. Invoking 42 U.S.C. § 1983, Brooks raised a number of constitutional and state-law claims against the defen-dants. Defendants removed the suit to federal court, and then filed an all-encompassing motion to dismiss, on grounds of lack of subject-matter jurisdiction, sovereign immunity, absolute immunity, public-official immunity, absolute prosecutorial immunity, testimonial immunity, failure to state a claim, and the statute of limitations. The district court dismissed for failure to state a claim, and the case has now reached this court. We affirm.

## I

Brooks joined the IDOC in 1977, and in 1980, he be-friended Matrisciano, a fellow employee. In 1995, Governor Jim Edgar appointed Brooks to the PRB, and he was reappointed by Governor George Ryan in 2001. One of the PRB's functions is to make parole decisions for certain classes of IDOC inmates. At one such hearing in December 2002, Matrisciano appeared and presented a statement in favor of inmate Harry Aleman's parole. Matrisciano's views, however, did not carry the day; only Brooks, out of the eleven PRB members present, voted in favor of Aleman.

Matrisciano's testimony before the PRB caused some controversy. Six days later, George de Tella, Associate Director at the IDOC, demoted Matrisciano. (Our earlier case arose out of this action: Matrisciano filed a lawsuit asserting that his demotion violated his First Amendment rights, but this court affirmed the grant of summary judgment to the defendants in that case. *Matrisciano*, *supra*.) Some time around January 2003, the IDOC referred its investigation of wrongdoing to the State Police, with defendant Mark Ross serving as the case agent. Over the course of his investigation, Ross interviewed various people, including Aleman, IDOC employee Nancy L. Miller, and PRB members Jorge L. Montes and Norman M. Sula. Assistant Attorneys General Joseph Ponsetto and Edward C. Carter III were present at the Miller interviews and assisted Ross at one of them. Ross released several investigative reports about his case, noting in a 2003 report that "Matrisciano and an unknown

member of the parole board, had accepted payment to speak favorably on behalf of inmate Harry Aleman at a parole hearing for Aleman." A January 2005 report specifically named Brooks as that PRB member, but Ross's investigation concluded with a report issued in November 2005 that refrained from identifying the PRB member who had accepted bribes. On December 9, 2005, Brooks and Matrisciano were indicted by a grand jury and charged with official misconduct and wire fraud in connection with the Aleman hearing. They were both acquitted on March 19, 2007, after a bench trial.

Brooks then filed this lawsuit on March 18, 2008, in the Circuit Court of Cook County, alleging violations under 42 U.S.C. § 1983 as well as state law. Brooks named as defendants Ross, Ponsetto, Carter, Montes, Sula, and Tupy (PRB counsel), as well as Illinois Attorney General Lisa Madigan and other unnamed or unknown state officials. Citing the federal claims, defendants removed the case to federal court. See 28 U.S.C. § 1441. (Sula was not part of the initial notice to remove, because it was unclear at the time whether he had properly been served.) Defendants then filed a motion to dismiss, which was granted in part, and Attorney General Lisa Madigan was dismissed from the case. Brooks parried with an amended complaint, which alleged that the defendants had deprived Brooks of due process and had conspired to do so, and also raised state-law theories of malicious prosecution, civil conspiracy, and intentional infliction of emotional distress ("IIED"). Defendants again filed a motion to dismiss based on untimeliness, sovereign immunity, absolute immunity, public official immunity,

prosecutorial immunity, and failure to state a claim. The district court granted the motion, relying on the last of these grounds. It either declined to rule on or rejected defendants' other arguments. Plaintiff has now appealed, and defendants both defend the district court's ruling and offer a number of other reasons why its judgment should be affirmed.

## II

This court reviews a dismissal under Rule 12(b)(6) for failure to state a claim *de novo*. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). In analyzing the case, we may affirm on any ground contained in the record. *Bennett v. Spear*, 520 U.S. 154, 166 (2002). We elect to examine the issues of timeliness, sovereign immunity, and proper pleading in this opinion. Because we find these issues sufficient to resolve the case, we need not reach defendants' arguments about absolute immunity, public official immunity, or prosecutorial immunity.

### A

The district court did not explicitly address the defendants' statute of limitations argument, but because we find it potentially dispositive of at least some parts of the case, we consider it first. A plaintiff in Illinois must pursue a personal injury action within 2 years from the accrual of the claim. 735 ILCS 5/13-202. Brooks's § 1983 claims follow suit. See *Wallace v. Kato*, 549 U.S. 384, 387 (2007) ("Section 1983 provides a federal cause of action, but

in several respects relevant here federal law looks to the law of the State in which the cause of action arose. This is so for the length of the statute of limitations: It is that which the State provides for personal-injury torts."). As noted above, Brooks was indicted on December 9, 2005, and acquitted on March 19, 2007. He filed his initial complaint on March 18, 2008. If his claims run from the time of indictment, they are untimely. If they run from the time of acquittal, the opposite is true.

Defendants claim that Brooks's federal § 1983 conspiracy and his state-law civil conspiracy and IIED claims are barred by the statute of limitations because they accrued at the time of the indictment. They concede, however, that the state-law malicious prosecution and § 1983 due process claims are not time-barred. This is so because the former has as one of its elements the termination of a prosecution in the defendant's favor. Brooks's § 1983 due process claim essentially contests the fairness of his prosecution. It is thus similar to his malicious prosecution claim, and "claims resembling malicious prosecution do not accrue until the prosecution has terminated in the plaintiff's favor." *Snodderly v. R.U.F.F. Drug Enforcement Task Force*, 239 F.3d 892, 896 (7th Cir. 2001). Therefore, that claim is not time-barred either.

Plaintiff has two responses to defendants' timeliness arguments. First, he contends that the court should not rule on a statute of limitations defense in response to a motion to dismiss. Second, he appeals to Illinois's continuing tort rule, which holds that when "a tort involves a continuing or repeated injury, the limitations period

does not begin to run until the date of the last injury or the date the tortious acts cease." *Belleville Toyota v. Toyota Motor Sales, U.S.A.*, 770 N.E.2d 177, 190 (Ill. 2002). Brooks believes that his entire prosecution constitutes a continuing tort.

While complaints typically do not address affirmative defenses, the statute of limitations may be raised in a motion to dismiss if "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). (Technically, one might see this as a motion for judgment on the pleadings under Rule 12(c) rather than a motion under Rule 12(b)(6), but the practical effect is the same.) We find it appropriate here to consider the statute of limitations because the relevant dates are set forth unambiguously in the complaint. It is also clear that the continuing tort rule does not apply in this case. The Supreme Court of Illinois has stated that "where there is a single overt act from which subsequent damages may flow, the statute begins to run on the date the defendant invaded the plaintiff's interest and inflicted injury, and this is so despite the continuing nature of the injury." *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 85 (Ill. 2003). The single overt act here is Brooks's indictment, even if the damages that Brooks suffered may have continued throughout his trial. We therefore find Brooks's § 1983 conspiracy claims and his state-law civil conspiracy and IIED claims time-barred.

B

While defendants concede that Brooks's state-law malicious prosecution was not time-barred, they argue that it is barred by sovereign immunity. The Illinois State Lawsuit Immunity Act stipulates that tort suits against the State must be pursued in the Illinois Court of Claims. 705 ILCS 505/8(d). This statute constitutes a partial waiver of sovereign immunity, providing Brooks with a court in which to pursue his state-law claim. It does, however, leave intact sovereign immunity for state-law claims pursued in federal court.

In this case, Brooks has chosen to sue employees of the State of Illinois rather than the State itself. An employee's conduct can be imputed to the State if "it is alleged that the State's agent acted in violation of statutory or constitutional law or in excess of his authority." *Richman v. Sheahan*, 270 F.3d 430, 441 (7th Cir. 2001). The district court found that sovereign immunity did not apply to the state-law claims in this case because Brooks alleged that the state agents acted in violation of the Constitution.

*Richman* actually supports a contrary result. In that case, the district court held that sovereign immunity did not apply because it found that the state-law tort claim at issue was not dependent on the alleged constitutional violation, but instead on a theory of wilful and wanton negligence. We reversed and found that the deputies' actions were within the scope of their authority for purposes of sovereign immunity. *Id.* at 442. Here, Brooks has pleaded both state-law and constitutional claims;

however, the former are not dependent on the latter. Brooks's malicious prosecution claim does not fall under the exception to sovereign immunity for state officials who have acted in excess of their authority, because "there are no allegations that the defendant was acting for a purpose unrelated to his employment." *Id.* As a result, Brooks's malicious prosecution claim is barred by sovereign immunity.

C

All that remains is Brooks's § 1983 due process claim. The primary ground on which the district court dismissed this claim was that Brooks had failed adequately to plead personal involvement, as his complaint stated that "one or more of the Defendants" had engaged in certain acts or deprived him of his constitutional rights. The district court was correct to point out that Brooks often uses this vague phrasing, which does not adequately connect specific defendants to illegal acts. See *Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir. 1986) ("An *individual* cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation.") (emphasis in original).

Some parts of Brooks's complaint, however, do specify a particular defendant as having engaged in certain acts. Paragraphs 70-71, 80, 84-85, 87, 88-90, and 92-93 of the complaint describe defendant Ross as producing various investigative reports, one of which named Brooks. In Paragraphs 84 and 85, Montes and Sula are named as

having participated in interviews conducted by Ross. Ponsetto and Carter are referenced in Paragraphs 89-91 as having either been present or having been present and assisted in interviews of Miller conducted by Ross or another investigator.

The question before us is whether these factual allegations provide sufficient notice to defendants of Brooks's claims. This requires us to analyze the Supreme Court's recent decisions in this area, including its most recent pronouncement in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). We begin with Rule 8, which states in relevant part: "A pleading that states a claim for relief must contain: . . . a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). The Rule reflects a liberal notice pleading regime, which is intended to "focus litigation on the merits of a claim" rather than on technicalities that might keep plaintiffs out of court. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002).

In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Court turned its attention to what was required of plaintiffs at the pleading stage. It concluded that plaintiffs' "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. The Court was careful to note that this did not impose a probability requirement on plaintiffs: "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* at 556. The Court did require, however, that the plaintiffs' claim be "plausi-

ble." In other words, "it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's allegations. *Id.*

Any doubt that *Twombly* had repudiated the general notice-pleading regime of Rule 8 was put to rest two weeks later, when the Court issued *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). *Erickson* reiterated that "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (internal quotation marks omitted) (omission in original). This court took *Twombly* and *Erickson* together to mean that "at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007).

This continues to be the case after *Iqbal*. That case clarified that *Twombly*'s plausibility requirement applies across the board, not just to antitrust cases. In addition, *Iqbal* gave further guidance to lower courts in evaluating complaints. It noted that a court need not accept as true "legal conclusions[, or t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." We understand the Court in *Iqbal* to be admonishing those plaintiffs who merely parrot the statutory language of the claims that they are pleading (something that anyone could do, regardless of what may be prompting the lawsuit), rather than providing some specific facts to ground those legal claims, that

they must do more. These are the plaintiffs who have not provided the "showing" required by Rule 8.

So, what do we take away from *Twombly*, *Erickson*, and *Iqbal*? First, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements.

Returning to the case at hand, we note that Brooks has alleged that the defendants engaged in a variety of activities: Ross produced investigative reports; Montes and Sula gave interviews; and Ponsetto and Carter were present and assisted in interviews. The Court in *Twombly* said that plaintiffs' allegations there of parallel conduct were "consistent with conspiracy, but just as much in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market." *Twombly*, 550 U.S. at 554. The Court found this insufficient to defeat a motion under Rule 12(b)(6). *Id.* The same is true here. The behavior Brooks has alleged that the defendants engaged in is just as consistent with lawful conduct as it is with wrongdoing. Without more, Brooks's allegations are too vague to provide notice to defendants of the contours of his § 1983 due process claim.

Paragraph 102, in contrast, does not suffer from the deficiencies that characterize the rest of Brooks's complaint. It reads as follows:

> Plaintiff is informed, believes and alleges that the Defendants while acting in concert with other State of Illinois officials and employees of the Attorney General's Office, Department of Corrections and Prisoner Review Board did knowingly, intentionally and maliciously prosecute Plaintiff and Ronald Matrisciano in retaliation for Plaintiff and the said Ronald Matrisciano exercising rights and privileges under the Constitutions and laws of the United States and State of Illinois.

In this paragraph, Brooks adequately pleads personal involvement, because he specifies that he is directing this allegation at all of the defendants. He also describes unlawful conduct, because it is not lawful to prosecute someone maliciously in retaliation for that person's exercising her constitutional rights. Nonetheless, this paragraph fails under *Iqbal,* because it is merely a formulaic recitation of the cause of action and nothing more. It therefore does not put the defendants on notice of what exactly they might have done to violate Brooks's rights under the Constitution, federal law, or state law.

Because Brooks has failed to ground his legal conclusions in a sufficiently plausible factual basis, we conclude that the district court was correct to grant summary judgment on this claim as well.

* * *

For these reasons, we AFFIRM the judgment of the district court.