In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

Nos. 24-1171 & 24-1197

JEFFREY ORR, *et al.*,

*Plaintiffs-Appellants,*

*v.*

LOUIS SHICKER, *et al.*,

*Defendants-Appellees.*

———————————

JAMES TERNAPROVICH, *et al.*,

*Plaintiffs-Appellants,*

*v.*

LOUIS SHICKER, *et al.*,

*Defendants-Appellees.*

———————————

Appeals from the United States District Court for the
Central District of Illinois.
Nos. 2:08-cv-02232-SLD & 1:20-cv-01258-SLD
**Sara Darrow**, *Chief Judge*.

———————————

ARGUED JANUARY 15, 2025 — DECIDED AUGUST 6, 2025

———————————

Before ROVNER, JACKSON-AKIWUMI, and MALDONADO, *Circuit Judges*.

MALDONADO, *Circuit Judge*. These consolidated cases involve roughly two thousand current and former Illinois prisoners diagnosed with hepatitis C. The plaintiffs allege that various Illinois Department of Corrections medical officials were deliberately indifferent to their medical needs in adopting and enforcing hepatitis C treatment policies over the past two decades. In 2024, the district court dismissed both operative complaints with prejudice after giving the plaintiffs repeated opportunities to amend. It offered two grounds for dismissal. First, it held that the plaintiffs brought official-capacity claims for damages under 42 U.S.C. § 1983, which is barred by the Eleventh Amendment. Alternatively, it found that the complaints failed to state a plausible claim for relief. We affirm on the district court's alternative ground—that the plaintiffs failed to state a plausible claim for relief under Federal Rule of Civil Procedure 12(b)(6).

## BACKGROUND

The Court assumes familiarity with the factual and procedural background, which we described in detail in *Orr v. Shicker (Orr I)*, 953 F.3d 490 (7th Cir. 2020). Below we provide a brief recap.

### I.  The *Orr* Litigation

In 2008, a putative class of prisoners diagnosed with hepatitis C sued Wexford Health Sources, Inc. (a private healthcare provider for IDOC) and various medical directors at IDOC under 42 U.S.C. § 1983, alleging that they were deliberately indifferent to the prisoners' medical condition when they refused to provide treatment. Over the next five years,

the district court consolidated numerous related cases and denied plaintiffs' motions for class certification and injunctive relief.

The parties then plodded through years of discovery until January 2016, when the *Orr* plaintiffs moved for reconsideration of the denial of class certification. The court again denied the motion but permitted a renewed request, citing major advances in hepatitis C treatment since 2008. Once risky and expensive, by 2016, treatment had become safer, more effective, and more affordable. So in November 2016 the *Orr* plaintiffs filed an updated complaint and renewed their bids for class certification and injunctive relief.

After more than two years of motion practice, the district court held an evidentiary hearing on the motions for class certification and injunctive relief, and in February 2019, it partially granted both motions. Specifically, the district court certified two classes of inmates: one with more advanced hepatitis C and another with less advanced disease progression, and it granted injunctive relief to the former class. The defendants sought an interlocutory appeal under Federal Rule of Civil Procedure 23(f), which our Court accepted.

We reversed and vacated both rulings in 2020. As to class certification, we held that the district court abused its discretion in certifying the proposed classes because the *Orr* plaintiffs failed to establish typicality and adequacy of representation. As to preliminary injunctive relief for the thousands of prisoners in the now decertified classes, we concluded that they had not shown a likelihood of irreparable harm absent injunctive relief. That conclusion rested heavily on two developments that expanded hepatitis C treatment for IDOC prisoners: first, the 2019 Protocol—a new hepatitis C treatment

program developed by IDOC and the University of Illinois – Chicago (UIC) — and second, the federal consent decree approved in *Lippert v. Ghosh*, No. 10-cv-4603 (N.D. Ill.), in May 2019. The 2019 Protocol outlined a telemedicine-based system through which IDOC screens, prioritizes, and refers prisoners with chronic hepatitis C to UIC for treatment, based on a multi-stage evaluation process that assesses medical eligibility, urgency, and disease severity. The *Lippert* decree, which remains in effect, is broader in scope than the 2019 Protocol but covers hepatitis C care and mandates systemic reforms by IDOC, including increased staffing, timely treatment, and ongoing oversight.

On remand after decertification, the *Orr* plaintiffs filed a second amended complaint seeking to bring claims for nearly two thousand individual prisoners. In a seven-page complaint, the *Orr* plaintiffs alleged generally that the defendants, in their capacity as medical directors at IDOC, denied each plaintiff effective treatment for hepatitis C in violation of the Eighth Amendment. They sought only money damages. The defendants moved to dismiss under Rule 12(b)(6), and the district court dismissed the case without prejudice. The court held that the complaint did not contain enough factual allegations to give each defendant fair notice of the claims, emphasizing that it failed to "make any factual allegations against [the] Defendants …."

A month later, the *Orr* plaintiffs filed a third amended complaint. The new complaint added another IDOC medical director as a defendant, but otherwise closely resembled the previous cryptic version. It alleged, again without specificity, that each defendant had served as IDOC's medical director at some point and had "adopted or continued to follow a policy

which was deliberately indifferent to the Plaintiffs' serious medical condition, the presence of the Hep C virus, prevented Plaintiffs from getting timely treatment or caused Plaintiffs not to receive treatment." The defendants again moved to dismiss, contending that the third amended complaint suffered from the same deficiencies as the second.

In January 2024, the district court dismissed the third amended complaint with prejudice. This time, the court held that the *Orr* plaintiffs' § 1983 claims were asserted against the defendants in their official capacities rather than their individual capacities, and therefore concluded that the defendants were immune from damages under the Eleventh Amendment. Alternatively, the court reiterated that the complaint failed to state a claim for individual liability because it lacked specific allegations of any defendant's personal involvement relating to the care of each plaintiff.

## II. The *Ternaprovich* Litigation

While the *Orr* litigation was pending after remand, a group of more than one hundred prisoners with hepatitis C (the *Ternaprovich* plaintiffs) filed a similar lawsuit in the same district court. Represented by the same counsel as the *Orr* plaintiffs, the *Ternaprovich* plaintiffs alleged nearly identical general allegations and named two additional IDOC doctors as defendants. Like the *Orr* plaintiffs, they sought only money damages.

As in *Orr*, the *Ternaprovich* plaintiffs did not advance past the pleading stage. After twice dismissing their earlier complaints without prejudice for failing to provide sufficient notice to the defendants, the district court dismissed the *Ternaprovich* plaintiffs' second amended complaint with

prejudice in January 2024 (on the same day it dismissed the *Orr* case). Again, the court dismissed the complaint on the dual grounds of sovereign immunity and Rule 12(b)(6).

\* \* \*

Both sets of plaintiffs timely appealed their respective dismissal orders, and the two cases have been consolidated on appeal. We now review the district court's dismissals de novo. *Dernis v. United States*, 136 F.4th 714, 716 (7th Cir. 2025) (dismissals under Rule 12(b)(6) and Rule 12(b)(1) are subject to de novo review).

## DISCUSSION

### I. The complaints assert individual-capacity claims

Section 1983 imposes liability on any "person" who, acting under color of state law, violates the Constitution or federal law. *Knowlton v. City of Wauwatosa*, 119 F.4th 507, 519 (7th Cir. 2024) (quoting 42 U.S.C. § 1983). Plaintiffs can sue state officials in either their individual or official capacities. In an official-capacity suit, "the plaintiff alleges that the defendant was party to the execution or implementation of official policy or conduct by a government because the real party in interest is the entity." *Hill v. Shelander*, 924 F.2d 1370, 1372 (7th Cir. 1991). By contrast, "an individual capacity suit focuses on the constitutional torts of an individual official." *Id.* (citation modified).

This distinction carries important consequences. In individual-capacity suits, plaintiffs can seek monetary damages. In official-capacity suits, however, the relief is limited to injunctive or declaratory remedies. *Knowlton*, 119 F.4th at 519. Crucially, the Eleventh Amendment bars damages claims against state officials sued in their official capacities,

depriving federal courts of jurisdiction over such claims. *See McHugh v. Ill. Dep't of Transp.*, 55 F.4th 529, 532–33 (7th Cir. 2022).

The *Orr* and *Ternaprovich* complaints do not state whether the defendants are being sued in their individual or official capacities. That omission alone does not render the pleadings deficient. We have declined to adopt a "rigid rule" that presumes a § 1983 plaintiff is suing a defendant in her official capacity simply because the complaint is silent. *Miller v. Smith*, 220 F.3d 491, 494 (7th Cir. 2000) (citing *Hill*, 924 F.2d at 1373). Instead, courts must evaluate the complaint "in its entirety" and look to the "conduct alleged" to determine whether the plaintiff intends to sue the defendant in an official or individual capacity. *Hill*, 924 F.2d at 1374.

Here the district court engaged in that analysis and concluded that the plaintiffs sued the defendants in their official capacity. That conclusion was not unreasonable. The complaints allege no facts connecting any defendant personally to the plaintiffs' alleged harm or to a particular policy. Rather, they broadly criticize IDOC's hepatitis C policies. But they never explain what role each defendant played in adopting or implementing those policies—an omission common in official-capacity suits. *Hill*, 924 F.2d at 1372; *see also Budd v. Motley*, 711 F.3d 840, 843 (7th Cir. 2013) (treating a complaint as an official-capacity suit where it "describ[ed] a municipal practice or custom in running the jail, rather than the Sheriff's personal conduct").

That said, the district court relied too heavily on the complaints' reference to defendants' policymaking. References to policymaking alone do not transform an individual-capacity suit into an official-capacity one; policymakers can still be

held personally liable when they devise or implement a deliberately indifferent policy. *See Armstrong v. Squadrito*, 152 F.3d 564, 581 (7th Cir. 1998). The Fourth Circuit recently said as much in a similar case, holding that a prison's chief physician could be held personally liable for the harms caused by creating and implementing the prison's hepatitis C policy. *Gordon v. Schilling*, 937 F.3d 348, 362 (4th Cir. 2019) (collecting circuit cases recognizing individual liability for creating or implementing unconstitutional policies). At most then, the capacity in which the defendants here were sued is ambiguous.

That ambiguity dissolves, though, when we consider that the complaints seek only damages—a telling choice. As we put it in *Miller*, "Why in the world would [they] have bothered to sue the [defendants] for damages in their official capacities when such a suit would run headlong into the 11th Amendment?" 220 F.3d at 494. Even the defendants treated the claims as individual-capacity suits in the district court; they moved to dismiss under Rule 12(b)(6) instead of invoking sovereign immunity, which the court raised sua sponte.[*]

Therefore, we depart from the district court's approach and interpret the complaints as asserting individual-capacity claims under § 1983. The combination of the explicit request for money damages and the context surrounding this long-running litigation is enough to support that inference. That, however, does not end the inquiry. We now turn to whether the allegations survive Rule 12(b)(6).

---

[*] On appeal, the defendants now assert Eleventh Amendment immunity as a defense.

**II. The complaints fail to state plausible claims for relief**

Our notice-pleading standard is deliberately "undemanding." *Brockett v. Effingham Cnty.*, 116 F.4th 680, 684 (7th Cir. 2024). A plaintiff "need not plead legal theories," *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011), nor "allege each element that the plaintiff eventually will need to prove," *Thomas v. JBS Green Bay, Inc.*, 120 F.4th 1335, 1337 (7th Cir. 2024). Rather, to defeat a motion to dismiss, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This means that the complaint must offer "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), or, as our Court has put it, "present a story that holds together," *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Underpinning this framework is a basic rule: a defendant must be given "fair notice of what the claim is and the grounds upon which it rests." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (citation modified).

The plaintiffs' operative complaints fall far short of this standard. The two complaints purport to bring medical deliberate indifference claims for roughly two thousand individual prisoners with hepatitis C yet say nothing about those prisoners' specific diagnoses, treatment histories, or periods of incarceration. Nor do they say when each defendant served as medical director or what role each played in shaping or enforcing IDOC's hepatitis C policies in relation to each plaintiff. These omissions compound each other. Without facts about each prisoner's medical needs or what each defendant knew or did at the relevant time, the plaintiffs cannot

plausibly allege that anyone acted with deliberate indifference toward any individual prisoner. *See Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 752 (7th Cir. 2021). That failure is especially glaring given the plaintiffs' concession that IDOC's hepatitis C treatment has evolved over time. And because the complaints do not tie any defendant to a specific policy at a specific time—or link that policy to any individual prisoner—they fail to give the individual defendants fair notice of the claims against them. *See Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007) ("[A]t some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8.").

Plaintiffs argue that requiring more detail at the pleading stage demands too much. In their view, it was enough to allege generally that the defendants "adopted a policy which excluded necessary medical treatment for hepatitis C solely to save money." Reply Br. at 4. But they are mistaken. As we have reiterated many times, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Peterson*, 986 F.3d at 751 (citation modified). Instead, plaintiffs must "adequately connect specific defendants to illegal acts." *Brooks*, 578 F.3d at 580 (citation omitted).

That requirement holds especially true in a case like this one. Treatment for hepatitis C varies with each patient's prognosis, making each plaintiff's deliberate indifference claim especially complex. *See Orr I*, 953 F.3d at 493 (describing the nuance in hepatitis C treatment); *see also Roe v. Elyea*, 631 F.3d 843, 848 (7th Cir. 2011) (noting that hepatitis C treatment varies "depend[ing] on the extent of the disease"). That

complexity demands more detail, not less. *See Swanson*, 614 F.3d at 405 ("[M]ore complex case[s] … will require more detail, both to give the opposing party notice of what the case is all about and to show how, in the plaintiff's mind at least, the dots should be connected.").

\* \* \*

The plaintiffs have not alleged enough facts to give each defendant notice of the individual claims brought by each prisoner, making their complaints insufficient under Rule 8 and subject to dismissal under Rule 12(b)(6). Additionally, the district court did not abuse its discretion by denying the *Orr* plaintiffs leave to file a fourth amended complaint or the *Ternaprovich* plaintiffs leave to file a third. The court gave the plaintiffs multiple opportunities and direction to cure their pleading deficiencies; even so, they persistently ignored that direction. More importantly, neither in the district court nor on appeal have they explained how they would have amended their pleadings to fix the defects. *See Law Offs. of David Freydin, P.C. v. Chamara*, 24 F.4th 1122, 1134 (7th Cir. 2022).

We therefore AFFIRM the judgments of the district court dismissing the *Orr* and *Ternaprovich* cases with prejudice.